# Pittsburg, Cincinnati & St. Louis Railway Company

### *v.*

# Henry R. Thompson.

1. Negligence — *of common carriers — duty of railroad companies in guarding against injury to passengers.* The true rule in regard to the degree of care required of railroad companies to guard against injury to their passengers is, that the carrier shall do all that human care, vigilance and foresight can reasonably do, consistent with the mode of conveyance and the practical operation of the road.

2. A company cannot be required, for the sake of making travel upon their road absolutely free from peril, to incur a degree of expense which would render the operation of the road impracticable.

3. It would be unreasonable to hold that a road-bed should be laid with ties of iron, or cut stone, because, in that way, the danger arising from wooden ties, subject to decay, would be avoided.

4. But it is by no means unreasonable to hold that, although a railway company may use ties of wood, such ties shall be absolutely sound and road-worthy.

5. The obligation of the company to provide the safest pattern of rail can not be made to depend merely upon whether a change of rail could be made without any additional expense.

6. Proof of negligence — *burden of proof.* In an action against a railroad company for personal injuries received from the alleged negligence of the defendants, if it be shown by the plaintiff that the injury was caused by the overturning of a car on the defendants' road, in which he was a passenger, without fault upon his part, he thereby makes out against the company a *prima facie* case of negligence, and places upon them the burden of rebutting that presumption by proving that the accident resulted from a cause for which they should not be held responsible.

7. Measure of damages *in such case — effect of payment of accident insurance.* The liability of a railway company to respond in damages for an injury, occasioned by accident, to a passenger on their road, is not discharged *pro tanto* by the payment of any sum, on account of such injury, by an accident insurance company, the primary liability being on the railway company.

8. Excessive damages. In an action against a railroad company to recover for injuries to the plaintiff occasioned by the negligence of the defendants, it appeared, the plaintiff, on account of the injuries, was con-

fined from two to three weeks to his bed, but did not, when quiet, suffer greatly from pain. After that period he began to walk about, though with great difficulty, but did not resume business in his office for three months. At the time of the trial, thirteen months after the accident, he was still feeling some pain and inconvenience: *Held*, if such temporary confinement and pain were the only consequences of the injury, a verdict of $5,000 should be regarded as excessive.

9.   But the proof being conflicting as to whether the plaintiff was injured in the membranous covering of the spine, or merely in the muscular ligaments connected with it, there being evidence from which the jury might find the plaintiff would never entirely recover, the attending physician and two others called by the plaintiff testifying that in their opinion in the future any imprudence or unusual exposure, which would not affect a person in sound condition, might lead to very serious and even fatal results, a verdict for that amount was not disturbed.

Appeal from the Circuit Court of Cook county; the Hon. E. S. Williams, Judge, presiding.

This was an action on the case, brought by Thompson against the railroad company, to recover damages for personal injuries sustained by the plaintiff while a passenger on the road of the defendants, the accident occurring, as is alleged, in consequence of the negligence of the company.

A trial in the court below resulted in a verdict in favor of the plaintiff for $5,000, upon which judgment was entered. The company appealed.

Mr. E. Walker, for the appellants, on the question of the degree of care and vigilance required of railroad companies in providing safe structures and machinery in the carrying of passengers, cited *Tuller et al.* v. *Talbot*, 23 Ill. 357; *Ill. Cent. Railroad Co.* v. *Phillips*, 49 id. 234 ; 2 Redfield on Railways, 187; *Bowen* v. *N. Y. Central R. R. Co.*, 18 N. Y. 408; Shearman & Redfield on Negligence, 296; *Weed* v. *Panama R. R. Co.*, 5 Duer, 192; *Fairchild* v. *California Stage Co.*, 13 Cal. 599 ; *Derwart* v. *Loomer*, 21 Conn. 245 ; *Farish* v. *Reigle*, 11 Gratt. 697 ; 4 Iowa, 547; *Thayer* v. *St. Louis, Alton and Terre Haute R. R. Co.*, 22 Ind. 26; *Readhead* v

*The Midland Railway Co.*, Redfield's Am. Railway Cases, 484; *Beisiegel* v. *New York Cent. R. R. Co.*, 4 N. Y. 15.

Messrs. Lyman & Jackson, for the appellee, on the same subject, cited *Galena and Chicago Union R. R. Co.* v. *Yarwood,* 15 Ill. 469; *Saltonstall* v. *Stokes*, 13 Pet. 191; *Christie* v. *Griggs*, 2 Campb. 79; *Galena and Chicago Union R. R. Co.* v. *Fay*, 16 Ill. 563; *Chicago, Burlington and Quincy R. R. Co.* v. *George*, 19 id. 517; *Asten* v. *Heeren,* 2 Esp. 533; *Ingalls* v. *Bills*, 9 Metc. 1; *Caldwell* v. *Murphy*, 1 Duer, 233; *Phila. and Reading R. R. Co.* v. *Derby*, 14 How. (U. S.) 585; Angell on Carriers, § 569; *Hegeman* v. *Western R. R. Co.*, 3 Kern. 24; *McElroy* v. *Nashua and Lowell R. R. Co.*, 4 Cush. 402; *Curtis* v. *Rochester and Syracuse R. R. Co.*, 18 N. Y. 537.

Mr. Chief Justice Lawrence delivered the opinion of the Court:

Whether the road-bed was in a safe condition at the time the accident occurred, which led to the injury of the plaintiff in the present case, is a question about which the evidence is far too contradictory to permit us to set aside the verdict, because unsustained by the evidence in that particular. Indeed, the impression produced upon our minds by the record inclines us to think, as the jury have found, that the road was not in as complete repair as it should have been. It is sufficient, however, on this point, to say, the evidence is very contradictory, and the verdict is not plainly against its weight.

So, too, as to the question whether the cars were precipitated from the track in consequence of the defective road-bed, admitting it to have been defective, or by reason of the inexplicable breaking of an axle apparently sound, we can only say the jury have found, and we cannot decide they found erroneously. It is the theory of appellants' counsel that the cars were thrown from the track by the breaking of an axle

which was, so far as could be discovered, sound. On the other hand, counsel for appellee contend that the axle was broken after the train was thrown from the track, or, if broken before, that it was in consequence of the roughness and improper condition of the road. The jury adopted one of the latter theories, and although the question is incapable of precise determination, there is, at least, this in favor of their conclusion, that one theory furnishes a cause for the breaking of the axle, while the other does not. Axles may sometimes break when the track is in good condition and the iron without any discoverable flaw, as stated by some of the witnesses, but we cannot condemn the action of a jury because it has found its verdict upon a theory which furnishes an explanation of the breaking, rather than upon one which does not. When the plaintiff showed the injury was caused by the overturning of the car, without fault upon his own part, he made out against the company, a *prima facie* case of negligence, and placed upon them the burden of rebutting that presumption by proving that the accident resulted from a cause for which they should not be held responsible.

The chief ground relied upon, however, for a reversal of the judgment, seems to be the alleged error in the fourth instruction given for the plaintiff. This was as follows :

"The jury are instructed, as a matter of law, that it is the duty of a railway company, employed in transporting passengers, to do all that human care, vigilance and foresight can do, both in providing safe coaches, machinery, tracks and roadway, and to keep the same in repair ; and if, from the evidence in this case, the jury believe that the plaintiff, while a passenger, in the cars of the defendant, received an injury resulting from the negligence of the defendant in either of the above particulars, they will find for the plaintiff and assess his damages."

It is urged that this instruction, in requiring a company to do all that human care, vigilance and foresight can do in providing safe coaches, machinery, tracks and roadway, imposes

upon them an obligation of unreasonable strictness and impossible of performance without subjecting all the railway companies in the country to bankruptcy. It would, for example, require them to lay steel rails instead of iron, and adopt all other possible precautions, without reference to the extravagance of the expenditure. In default of doing this they would become insurers for their passengers, except as against the acts of God and the public enemy.

The instruction, in its strict sense, is open to this objection, the true rule being, as said by this court in *Fuller* v. *Talbott*, 23 Ill. 357, that the carrier shall do all that human care, vigilance and foresight can reasonably do, consistently with the mode of conveyance and the practical operation of the road. A company cannot be required, for the sake of making travel upon their road absolutely free from peril, to incur a degree of expense which would render the operation of the road impracticable. It would be unreasonable, for example, to hold that a road-bed should be laid with ties of iron or cut stone, because in that way the danger arising from wooden ties subject to decay would be avoided, but, on the other hand, it is by no means unreasonable to hold that, although a railway company may use ties of wood, such ties shall be absolutely sound and road-worthy.

Still, although this instruction was, in its literal sense, erroneous, it is no ground for reversing the judgment in the present case. The defendant asked, and the court gave, the following instruction, which embodies, substantially, in another form of words, the same principle announced in the plaintiff's fourth instruction:

"*Third.* The defendant was bound to use the utmost care and diligence in providing a safe, sufficient and suitable means of conveyance for the plaintiff, in every thing appertaining to the mode of conveyance adopted, in order to prevent those injuries which human care and foresight could guard against; and if, in the absence of such care and prudence, and by reason thereof, the plaintiff sustained injury, the defendant is liable to the extent of such injury.

" On the other hand, if the injury complained of was occasioned by an internal or .hidden defect in the axle of the car in which the plaintiff was at the time riding, which a thorough and careful examination would not disclose, and which could not be guarded against by the exercise of a sound judgment and the most vigilant oversight, then the defendant is not liable for the injury, if any, sustained by the plaintiff."

There is no substantial difference between this and the plaintiff's fourth instruction, as to the degree of care required from a railway company, and we cannot reverse for an erroneous instruction when the same instruction has been asked by the adverse party and given at his suggestion. It is evident, indeed, from the whole record, taken in connection with this instruction asked by the defendant, that the case was tried on the question whether the accident was caused by an internal defect of the axle which could not be guarded against by the most vigilant foresight, or was attributable to decayed ties and battered rails, and an uneven road-bed; defects which can be guarded against by that reasonable degree of care for which it is admitted a railway company must be held responsible.

The fifth instruction asked by the defendant was properly refused, because one clause in it makes the obligation of the company to provide the safest pattern of rail depend merely upon whether a change of rail could be made without any additional expense.

The eighth instruction asked by defendant, directing the jury to deduct from the damages any sum paid to the plaintiff by an accident insurance company, was properly refused. If such sum was paid, it was not *pro tanto* a discharge of the railway company. The primary liability was on this company.

The only remaining question is as to the quantum of damages. The jury found $5,000. It is claimed the verdict is unreasonably large. The proof is conflicting as to whether the plaintiff was injured in the membranous covering of the spine or merely in the muscular ligaments connected with it. He was confined from two to three weeks to his bed, but did

not, when quiet, suffer greatly from pain. After that period he began to walk about, though with great difficulty, but did not resume business in his office for three months. At the time of the trial, thirteen months after the accident, he was still feeling some pain and inconvenience. If this temporary confinement and pain were the only consequences of the injury, we should not hesitate to pronounce the damages excessive. But the physician who attended the plaintiff, testified that, in his opinion, the plaintiff would never entirely recover, and that, in future, any imprudence or unusual exposure which would not affect a person in sound condition, might lead to very serious and even fatal results. Two other physicians called by plaintiff concurred in this view, while two, called by the defendant, thought the injury was only to the muscles and not to the spine or its coverings, and that the recovery was already substantially complete. In the former view the damages cannot be considered excessive, and we have no right to say the jury erred in adopting it, rather than that of the physicians called by defendant.

*Judgment affirmed.*