Owen, C. J.
Wo shall consider the questions assigned for error substantially in the order in which they are presented in the foregoing statement.
I. Did the trial court err in admitting in evidence the opinions of physicians as to what was implied to • one acquainted with drugs by the inscription written on the label of the bottle delivered to the plaintiff: “ Oil of almonds ?”
*480 Assuming for the present that the failure of the defendant and of his agent to label the bottle “ poison ” was properly-submitted to the jury upon the issue of negligence, we conclude that there was no error in allowing persons accustomed to handling drugs to testify that the words “ oil of almonds ” indicated the innocent oil. It was practically equivalent to saying that it did not indicate poison, and to that extent reflected upon the question of negligence.
II. — III. Did the court err in excluding the evidence offered, and in refusing the instruction requested, concerning the second marriage of the plaintiff as an element affecting the question of damages ?
The counsel for plaintiff in error maintains that this action of the court was error, and upon the following reasoning: “ If it be true that it was proper for the jury to take into account the probable length of life of the deceased wife, and the services she would probably render, was it not also proper to consider that another woman occupied the same relation towards the husband' and children, rendered the same services, aided in the accumulation of property, and became to them precisely what the deceased woman would have been had she lived; was it of any consequence to the husband, whether one woman or another, rendered the same services in the candy business, and aided him in his financial accumulations ¶ Can it be that he could recover for years of loss of these services by reason of the death of Angela, when during these same years the same pecuniary services were being rendered to him by the other woman f Suppose the first woman had been an unsuitable person to rear his children, negligent in the discharge of her duties to him, and to them, which as a wife and mother she should have done, had failed to aid him in his financial accumulations, upon her death another woman came into the same relations with him and liis children, but rendered valuable services to both, shall it be said that this loss can not be mitigated by proof of such a state of facts? Should not the jury have been put in possession of all the facts surrounding this husband and these children during the years that followed *481 the death of the wife and mother, so that they could have better determined what the real pecuniary loss to both was ? ”
While this reasoning is not without plausibility, it is wholly unsupported by adjudication, so far as we have been able, with the aid of counsel for plaintiff in error, to prosecute our researches.
This remedy is created by statute (sections 6134 and 6135 of the Revised Statutes), which provides that the action shall be for the benefit of the wife or husband, and parents and children * ' * * and shall be brought by and in the name of the personal representative of the deceased person; and in every such action the jury may give such damages (not exceeding $10,000) as they may think proportioned to the pecuniary injury resulting from such death, to the persons, respectively, for whose benefit such action shall be brought.
In construing this statute this court has held that in such action, the amount of damage, within the limits of the law, is to be ascertained by the jury, from the proofs in the case, and should be a fair and just compensation with reference to the pecuniary injury resulting to the beneficiary from such death; and in determining this the reasonable expectation of what the next of kin might have received from the deceased, had he lived, is a proper subject for the consideration of the jury. Steel v. Kurtz, 28 Ohio St. 191.
This is not only a sound exposition of the statute, but aids us in solving the question under consideration.
The husband and children of the intestate lost, by the wrongful act of the defendant below, all that they might, by reasonable expectation, have received in pecuniary benefit, from the deceased wife and mother, and they lost that forever, and beyond all hope of recovery.
ITow are they to be compensated for this loss? Shall this loss be the measure of recovery, or shall the defendant, through whose negligent act the loss was sustained, be per7 mitted to show that a substitute, in some degree, at least, has been found for that pecuniary benefit which was lost by the death, and to off-set this substitute against the demand which *482 the statute has plainly authorized ? It will be observed that this claim is in the nature neither of set-off nor counter-claim; nor is it “ connected with the subject of the action,” as contemplated by section 5072 of the Revised Statutes.
Upon the plaintiff's appointment as administrator, the right of action at once vested in him, and there can be no doubt that if the trial had occurred at any time prior to his second marriage the full measure of recovery contemplated by the statute should have been accorded him.
Did the measure of that recovery become impaired or narrowed by a marriage which occurred subsequent to the commencement of the action ?
Althorf v. Wolfe, 22 N. Y. 355, was an action, brought under a statute similar to our own, for wrongfully causing the death of an intestate. The defendant offered to prove in mitigation of damages, that the life of the deceased was insured and that the insurance money was paid to his wife upon his death. It was held that the evidence was not admissible. It could be contended with some plausibility that the loss was mitigated by the rece;pt of this money by the widow. Let it be supposed that in the case at bar insurance money due upon the death of the wife had been paid to the husband, and from this sum he had procured the services of a woman to perform like pecuniary services, and contribute by her labor (far beyond the wages paid her) to the accumulation of property in the same manner as the deceased wife. Could it not be said with the same plausibility as it is now maintained, that these facts tended to mitigate the damages sought to be recovered by reason of the loss of that pecuniary benefit which was derived by her husband and children from her services?
It should be kept in mind that the statutes as construed by the courts have thoroughly divested this subject of every element of sentiment, and of every theory of solace for bereavement, as was well illustrated by the charge of the trial court. The only loss to be repaired is pecuniary loss, and the only theory of redress is that supplied by the statute which does not seem to admit of any theory of set off, or compensation with which the wrongdoer is in no manner connected. It *483 has been said that: “ The fact of insurance does not diminish the amount of pecuniary damage suffered by the defendant’s fault, though it provides a method of compensation for it. Besides, the party effecting the insurance paid the full value of it; and there is no equity in the claim of the negligent person to the benefit of a contract for which he never gave any consideration.” Shear. & Red. on Neg. § 609.
This general view is supported by Baltimore & Ohio Ry. Co. v. Wightman, 29 Gratt. 431; Harding v. Town of Townshend, 43 Vt. 536; Pitts., Cin. & St. L. R. Co. v. Thompson, 56 Ill. 138.
It is due to counsel for plaintiff in error to say that he does not maintain that the fact of re-marriage and the services of the second wife of the plaintiff should have been submitted to the jury in mitigation of damages for the reason that the husband and children were thereby provided with another wife and mother, but he restricts his claim to the pecuniary services and value to them of the second wife, who, in such degree as the jury, if permitted, might find, performed like services ahd contributed in like manner to the pecuniary benefit of the family as the deceased wife and mother. If the jury were permitted to consider this element of mitigation of damages, the plaintiff ought to be permitted to show, as a sort of counter set-off to it, the expenses incurred by the husband on account of the marriage, and whether the nuptials were cheap and simple or expensive and luxurious; for certainly to the extent of such outlay the means of supporting the family were reduced.
These considerations, and the comparison which such a rule would invite between the respective earning capacity of the first wife and mother on the one hand and the second wife and step-mother on the other, would tend to complicate the issues beyond anything contemplated by the statutes under whose plain provisions the relief is sought.
IV. Did the court err in permitting the plaintiff’s counsel to read the extract from Elwell’s book ?
*484 It related to the fact that the drug which was sold to the plaintiff, and which caused the death complained of, was not labeled as “ poison.”
If it would have been within the province of legitimate argument to comment at all upon the fact that the poison was not so labeled or marked as to indicate its dangerous character, it was not an abuse of discretion to permit the extract to be read. Legg v. Drake, 1 Ohio St. 277; Insurance Co. v. Cheeve, 36 Ohio St. 209. It related to the general question of negligence, and served to illustrate the argument of counsel, for which purpose alone it was permitted.
It is maintained by counsel, however, that the fact at which the reading of the extract was aimed was not in issue and not a proper subject of either proof or comment. We shall consider this feature of the case in the next subdivision of this opinion.
Y. It is maintained by the plaintiff in error, that the trial court erred in reading and commenting to the jury upon section 6957 of the Revised Statutes, which makes it a criminal offense to sell a poisonous drug without labeling the package containing it, “ poison.” Upon this question the counsel for the plaintiff in error says in argument:
“ I insist that under the petition this whole subject-matter is foreign to the issues. There is no negligence of this character charged in the petition. The issue was whether Guarnieri called for the sweet oil of almonds and was carelessly sold the bitter oil of almonds — that is the entire charge of negligence embraced in the petition. Hence it is of no consequence whether the bottle containing the drug was properly labeled and registered or not. The whole effect of thus instructing the jury was to mislead them — to divert them from the real issue, and direct them to other issues not in the case.”
It is true that this fact is not stated in the petition. It is also true that the substantive wrongful act of which the plaintiff complained, was not the omission properly to label a poisonous drug as the statute requires. The wrongful act complained of — the act which led to the injury — was carelessly *485 selling and delivering to the plaintiff a deadly poison instead of the harmless medicine he called for.
The contention of counsel presupposes that no act of negligence can be proved except it be alleged in the petition. This position is untenable. The allegation in a pleading that the party complained against negligently committed the particular act which led to the injury whose redress is sought, furnishes the predicate for the proof of all such incidental facts and circumstances both of omission and commission as fairly tend to establish the negligence of the primary fact complained of.
This rule of pleading is abundantly established by authority. Ware v. Gay, 11 Pick. 106; McCauley v. Davidson, 10 Minn. 418; Clark v. Chicago, B. & Q. R. Co., 15 Fed. Rep. 588; Grinde v. M. St. P. R. Co., 42 Iowa, 376; Indianapolis, P. & C. R. Co. v. Keely, 23 Ind. 133; 2 Bates Pl. 615.
Meek v. Penn. Co., 38 Ohio St. 632, was an action for wrongfully causing the death of the plaintiff’s intestate. The allegations of the petition which were in issue were, that the defendant by its wrongful act, neglect and default caused the death of Meek, the plaintiff’s intestate, while'he was walking on the railroad track in the city of Bellaire. There was no averment in the petition of a violation by the defendant of an ordinance of the city. Upon the trial, an ordinance of the city, forbidding trains to move at a higher rate of speed than eight miles an hour, was offered in evidence and rejected by the court; This was held to be error.
This court, speaking by Johnson, J., said : “ While the violation of a law ,OR ordinance is not per se, conclusive proof of negligence that will render the company liable, yet it is competent to be considered with all other evidence in the case. * * * It was' a command to those operating trains within the city limits which it was their duty to obey, and a disobedience, either wilfully or negligently, resulting in injury, is some evidence to be considered in determining the defendant’s liability. It served to give character to the act causing the injury.”
The plaintiff, in the case at bar, having alleged that the defendant carelessly sold and delivered to the plaintiff a poison *486 ous drug for harmless medicine, could safely rest the issue upon such averment. To plead specially all the facts and circumstances from which the negligence could be inferred, would be to plead evidence instead of facts.
It was a question fairly addressed to the jury, in determining the issue of negligence, whether the omission to label the fatal drug contributed to the wrong complained of, and such omission was certainly none the less a negligent act because it is denounced as a crime by the statute. The charge of the court fairly submitted to the jury whether this particular act of omission contributed to the injury complained of.
This conclusion answers other propositions relied upon by the plaintiff in error as ground of reversal.
YI. The plaintiff maintains that the court erred in giving the instructions to the jury upon the subject of the husband’s agency and of his relation to his wife in the purchase of the drug which caused her death, as they appear in the sixth paragraph of the statement.
The court charged the jury, substantially, that a purchase of medicine by a husband for his wife in the discharge of his duty as such husband, does not constitute him the agent of his wife in such sense as to charge her with his negligence. As shown by the statement of the case, the only authority given to the husband by the wife for the purchase of medicine is to be found in the expression by her of a desire or need of some oil of sweet almonds. There is mo thing in the record to justify the assumption that she had done or said anything that can be construed as a direction to him concerning the purchase for her of the medicine she required. It was clearly within the line of his simplest duty as a husband to procure for her the desired medicine. The criticism of counsel upon the instructions complained of is that in the definition of agency the wife must have been personally present with her husband at the store and he there must have been under her direction and control. The instruction was: “ In order to make him the agent of the wife in this transaction she must have selected the medicine; directed that he should purchase it, and he must *487 have had nothing to do in the matter except by her procurement and direction.” We do not think that this instruction is capable of the construction given it by counsel, nor that the jury could have so understood it. It appeared by the evidence, and that without conflict, that the wife was confined to her bed at home, and we must suppose that the jury considered the instruction in the light of that fact. The court was right. The strong presumption is that a husband in the purchase of necessaries, either food or medicine, for his wife and children, is acting upon the promptings of the duty which he owes to them as a husband and father, rather than as a mere medium or agent in a business transaction; and evidence to rebut this presumption should be quite clear and satisfactory, at least answering the requirements of the very careful and considerate instruction of the court below upon this subject.
Intimately connected with this subject is that arising upon the exception to the instruction which is set forth in the seventh • paragraph of the statement, which we shall next consider.
YII. The court instructed the jury that the doctrine of imputed negligence does not prevail in Ohio, and that if the jury should find that the deceased came to her death by the wrongful act, neglect or default of the defendant by himself or his agent, then the plaintiff is not deprived of the right of action by reason of the negligence of the husband unless he was her agent at the time. The court below was asked to apply the familiar principle of contributory negligence as a defense to the plaintiff’s action. To do this it became necessary, in case the jury should find the wife without fault, to insist that the negligence of the husband contributed with that of the defendant to produce the injury complained of. This defense necessarily involved the assumption either that the husband was the agent of the wife or that by reason of their marital relation his negligence was to be imputed to her. The contention now is that the doctrine of imputed negligence still prevails in Ohio so far as relates to husband and wife. In Bellefontaine & Ind. R. Co. v. Snyder, 18 Ohio St. 399, it was held that the negligence of a parent or custodian of a child, cannot be *488 imputed to the child, to bar its right of action against others for injuries resulting from their wrongful acts.
Again, it was said by this court in Cleveland, Col. & Cin. R. Co. v. Manson, 30 Ohio St. 451, (first paragraph of the syllabus): “ The doctrine of imputed negligence does not prevail in the state of Ohio, and a child of tender years, injured by the fault of another, is not deprived of a right of action, by reason of contributory negligence on the part of a parent or guardian.”
Transfer Co. v. Kelly, 36 Ohio St. 86, it was held that in an action by a railroad passenger, (without fault himself) for a personal injury, against a defendant whose negligence directly and proximately concurred with the negligence of the railroad connpany in producing the injury, the concurrent negligence of the company cannot be imputed to the plaintiff’ so as to charge him with contributing to his own injury.
In Street Railway Co. v. Eadie, 43 Ohio St. 91, a minor, fully capable of taking reasonable care, of herself, was riding Avith her father in his Avagon, Avhen she Avas injured by a collision between the wagon and a street car, caused by the mutual negligence of her father and a street car driver, but without fault on her part. It was held that her father’s negligence Avas not to be imputed to her to bar her recovery against the street car company. It is maintained, hoAvevef, that these cases are all distinguishable from the case at bar. The contention is that “the common Irav doctrine Avith reference to the marital relation still continues in force in Ohio; that so far as their personal relations are concerned, the husband and AAÚfe arc one in laAV; that the acts of each are binding upon and imputable to the other.”
The statute authorizes an action like the present one in any case Avhere the defendant AArould have been liable if death had not ensued. Indeed, this is one of the tests of the right to recover. If the Avife vvere alive and prosecuting her action for an injury'resulting to her by reason of the wrongful act of the defendant, her recovery would be solely for her OAvn use and benefit, and the fruits of her judgment Avould be her sole and separate property free from any right of her husband therein, growing out of the marital relation. The plaintiff does not *489 prosecute tbis action as husband, but as the administrator of the wife. It is prosecuted for the benefit of the children as well as the husband of the intestate. The right of the beneficiaries as well to a recovery as to the fruits of it, are to be tested by the status which the law would have ascribed to the wife and mother if she were alive and prosecuting her action for an injury to her health or person.
The law having severed the relations for the purposes of such prosecution by her, what reason can be urged for imputing to her the contributory negligence of one who could have had no lawful pecuniary interest in a recovery by her for an injury she had sustained by the negligence of a wrong doer ?
The doctrine of contributory negligence which is invoked by the plaintiff in error, is founded upon considerations which find no application in logic or justice to the case at bar. These are: (1) The mutual wrong and negligence of the parties, and the reluctance of the law to attempt an apportionment of the wrong between them. (2) The principle which requires every suitor who seeks to enforce his rights or redress his wrongs, to go into court with clean hands, and which will not permit him to recover for his own wrong. (3) The policy of making the personal interests of parties dependent upon their care and prudence. This is the settled doctrine of our state. Bellefontaine & Ind. R. Co. v. Snyder, supra; Street Raiway Co. v. Eadie, supra. None of these considerations call upon us to declare as the law of this state that the personal representative of plaintiff’s intestate shall not recover for her death caused, without her fault, by the negligent act of the defendant, by reason of any fiction-that her husband’s act was hers.
VIII. The court was requested by the- defendant to instruct the jury that: “ If Forster, as the agent of Davis, was guilty of negligence in not properly putting up and labeling the drug, still if that negligence did not cause the death of Mrs. Guarnieri, that is, if you find that had the medicine been properly put up and labeled, she would have taken it precisely as she did take it, and died by reason thereof, then such negligence *490 did not produce the death and the plaintiff cannot recover, and you shall find for the defendant.”
The court properly refused this request. It necessarily involved the presupposition that the failure to label the drug sold was the only act of negligence for which the defendant was called upon to answer. The question becomes an important one in the light of the special verdict which contains the following questions and answers : “ 15. If Forster had labeled the bottle which Guarnieri took away, e oil of bitter almond ’ would that have prevented the injury? Probably not. 16. If Forster had' labeled the bottle ‘poison’ would that have prevented the injury ? Probably not.”
The j uiy was dealing with the probabilities in the case. It is not necessary to the determination of the issues in a civil case (with very few exceptions, of which the present is not one), that the triers should believe the existence of any material fact, but that the probabilities, when weighed by them, preponderate in favor of the fact which they find to be established by the proof. It is legally and logically impossible for it to be probable that a fact exists, and at the same time probable that it does not exist. When the jury found that the injury would probably not have been prevented by labeling the bottle “ poison,” or “ oil of bitter almond,” they settled that issue in favor of the defendant. The jury may well have concluded that the imperfect knowledge of the English language which Guarnieri and his wife were both shown to possess, would have prevented an intelligent understanding of any label written or printed in English. But these facts still remained : A poisonous drug was sold and delivered to one who believed it to be an innocent medicine, and who delivered it to his wife to bo taken as such. That Forster sold the drug without knowing that it was poison. That Guarnieri, in procuring the drug, relied upon the skill of Forster, and not upon his own inspection of it.
That, while Guarnieri smelled of the drug before purchasing it, and remarked, “ That smells like it” (the bland oil), the odor of the two is similar. That Mrs. Guarnieri could not by the use of ordinary care have discovered, before swallow *491 ing it, that it was not the harmless oil. That Guarnieri could not, by the use of ordinary care, have discovered that it was not oil of sweet almond. That Guarnieri was not acting as the agent of his wife. These facts were all found by the jury either by the general finding for the plaintiff, or by the special verdict.
The jury was called upon to say whether these facts established the charge of negligence alleged in the petition. That they did can scarcely admit of serious discussion, unless indeed the claim of plaintiff in error, which is considered in the next subdivision of this opinion, is well founded. Before proceeding to the consideration of that branch of the case, it is proper to say that in our opinion the special verdict already referred to is an element in this case whose importance is underrated by the counsel for plaintiff-in error.
Indeed, it was not deemed of sufficient consequence to justify incorporating it in the printed record filed in the case. The findings of this special verdict render immaterial such portions of the charge to the. jury as were not calculated to induce the particular finding upon the subject involved in the instruction.
A special verdict is authorized by our statutes, which provide that when a special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court may give judgment accordingly. (Sections 5200, 5201, 5202, Revised Statutes.) It was held in Marcote v. Railroad Co., 49 Mich. 99 (Cooley, J., delivering the opinion), that where it appears by the special findings of the jury that the case did not turn upon particular matters involved in the charge, so much of the eharge as relates to such matters is immaterial.
IX. The plaintiff in error vigorously maintains, nowever, that neither the facts alleged in the petition, nor those proved upon the trial establish his liability. The reasoning is that Davis was under no obligation to the deceased either by contract or by operation of law That there was not such privity of relation between him and the deceased as imposed upon *492 him any duty towards her, and that he was not charged in the petition with the violation of any duty arising by operation of law. It is not a sound proposition to say that a dealer in drugs, having in stock, and for sale, deadly poisons, owes no duty to persons who do not deal directly with him in relation to them. The public safety and security against the fatal consequences of negligence in keeping, handling and disposing of such dangerous drugs, is a consideration to which no dealer can safely close his eyes. An imperative social duty requires of him that he use such precautions as are liable to prevent death or serious injury to those who may, in the ordinary course of events, be exposed to the dangers incident to the traffic in poisonous drugs. The jury found that Forster, the agent of the defendant, sold a deadly drug to a customer without knowing it was a poison, and without ascertaining for what use or for whom it was purchased. This is practically the finding of the jury á's indicated in the answers to the second and third interrogatories propounded by the defendant below.
In Thomas v. Winchester, 6 N. Y. 397, the defendant below, by his agent, put up belladomia (a poison), labeled it dandelion (a harmless drug), and put it upon the market. After passing through several intermediate agencies, in the original package, it was finally sold as dandelion by an innocent retailer to a customer who used it to her serious injury. The court held, as indicated by the syllabus:
“ A dealer in drugs and medicines, who carelessly labels a deadly poison as a harmless medicine, and sends it so labeled into market, is liable to all persons, who, without fault on their part, are injured by using it as such medicine, in consequence of the false label.
“ The liability of the dealer in such case arises, not out of any contract or _ direct privity between him and the person injured, but out of the duty which the law imposes upon him to avoid acts in their nature dangerous to the lives of others. He is liable, therefore, though the poisonous drug with such label may have passed through many intermediate sales before it reached the hands of the person injured.
*493 “ Where such negligent act is done by an agent, the principal is liable for the injury caused thereby.”
It was held in Norton v. Sewall, 106 Mass. 143, that: “If an apothecary negligently sells a deadly poison as and for a harmless medicine to A, who buys it to administer to B, and gives B a dose of it as a medicine, from which he dies in a few hours, a right of action in tort against the apothecary survives to B’s administrator.”
Gray, J., speaking for the court says : “This finding includes a violation of duty on the part of the defendant, and an injury resulting therefrom to the intestate, for which the defendant was responsible, without regard to the question of privity of contract between them.” The analogies of this case 'to the one at bar are obvious. It was neither alleged nor proved in that case that the purchaser informed the dealer for whom the drug was intended. Cooley, in his valuable treatise on the law of torts, comments with approval upon the case of Thomas v. Winchester, spura, and adds: “There is a maxim that ‘fraud is not purged by circuity/ and this is true of any wrongful act. If its influence must naturally, and without the interposition of any extraordinary event, produce to some one an injurious result, it is immaterial what shall be the circuit of events or the number of successive stages.” Cooley’s Torts, 75.
In the case at bar the evidence tended to show, and the jury was justified in finding (and we are now to presume did find by the general and special verdict), that Guarnieri called at the drug store of the defendant for a harmless medicine ; that the agent of the defendant carelessly sold him a poisonous drug without informing himself by whom or for what it was intended to be used; that the purchaser, supposing it to be what he had called for, administered it to his wife who took it in the belief that it was the harmless medicine, and instantly died from its effects.
The court is unanimous in the opinion that these facts constituted a cause of action in favor of the administrator of the deceased for wrongfully causing her death.
*494 10. The exception to instructions to the jury on the subject of damages, found in paragraph 9 of the statement, is not open to the objection of counsel that it includes in the term “ services to the family. ” not only financial aid, but companion-^ ship to the husband and children, instruction by way of culture, moral training, and other elements of like character, which are not within the rule of pecuniary compensation. It impresses us as a sound, clear and considerate statement of the true rule of damages applicable to the case.
There are other assignments of error, all of which have been thoroughly considered, and, in our opinion, they are not well taken.
The case is an unfortunate one; no intentional wrong is imputed to any one; but a case of actionable neglect was clearly established. The prosecution was contested, step by step, with more than ordinary skill and vigor; the trial court was called upon to determine during the heat of the trial almost an infinite number and variety of questions, but the record is free from error and the Judgment is affirmed.
Minshall J., dissents from the second proposition of the syllabus, but concurs in the judgment on other grounds.