The Chicago and Alton Railroad Company

*v.*

James Kerr.

*Filed at Springfield January 13, 1894.*

| 148 | 605 |
| 52a | 576 |
| 52a | 652 |
| 148 | 605 |
| 55a | 688 |
| 148 | 605 |
| 74a | 76 |
| 148 | 605 |
| 80a | 94 |
| 148 | 605 |
| 214 | 4128 |

1. NEGLIGENCE—*master and servant—duty in respect of railroad track as to servants, and also as to passengers.* As to its employes and servants a railway company must, as a general rule, exercise all reasonable care and diligence to place its road-bed, track and structures in a safe condition, and keep them so. But as to its passengers it is to be held to the highest degree of care in that regard.

2. SAME—*instructions as to degree of care to protect servants.* In an action by a fireman against a railway company to recover for a personal injury resulting from a defect in the railroad track, it will be error to instruct the jury, "as a matter of law, that a railway company owes the duty to its employes to do all that human care, vigilance and foresight can do, consistently with the practical operation of its road, in providing a safe road, road-bed, tracks, ties and rails, and to keep the same in repair," as it requires too strict a rule, and a higher degree of care than that required by the law.

3. A railroad company is not bound to furnish absolutely safe machinery for its employes. The law only imposes on such a company the obligation to use reasonable and ordinary care and diligence in providing suitable and safe machinery, tracks and switches, etc., for the use of those engaged in its service. The case of *Toledo, Peoria and*

*Warsaw Railway Co.* v. *Conroy*, 68 Ill. 560, in so far as it requires a greater degree of care than is here stated, is overruled.

4. Same—*failure of railway company to give its servants notice of unsafe condition of its track.* In an action by a fireman of a railway company against the company for a personal injury by being thrown from the engine, if the unsafe condition of the defendant's track is shown, and knowledge of that fact is admitted by the company's superintendent, the plaintiff's right to recover will not depend upon the degree of care the defendant is required to exercise in providing a safe track, and the defendant will be liable for neglecting to give notice to those in charge of the train of the condition of the track, so that they might lessen the speed of the train in crossing the defective track.

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. Thomas F. Tipton, Judge, presiding.

Mr. William Brown, and Messrs. Williams & Capen, for the appellant:

The degree of care and prudence which a master is bound, as between himself and his employe, to exercise, in providing tools, machinery and appliances for transacting the business of the employment, is that reasonable care and prudence in selecting and ordering what may be required in his business which every prudent man is expected to employ in providing himself with the conveniences of his occupation. *Gates* v. *Railroad Co.* 28 Minn. 10; *Railway Co.* v. *Weaver*, 35 Kan. 412; *Railroad Co.* v. *Wagner*, 21 Am. and Eng. Ry. Cas. 63.

Mr. Edward Barry, and Mr. John E. Pollock, for the appellee:

In an early case it was held to be the duty of railroads to keep their roads and works, and all portions of the track, in such repair, and so watched and tended, as to insure the safety of all who may lawfully be upon them, whether passengers or servants or others. *Railroad Co.* v. *Swett*, 45 Ill. 197.

Such an obligation is permanent, and can not be avoided by delegating the power to look after these things to other

employes. The undertaking with their servants is direct that they will perform these obligations. *Railroad Co.* v. *Swett,* 45 Ill. 197; *Railroad Co.* v. *Jackson,* 55 id. 496.

Servants have a right to assume that the master will perform his duty in that regard. *Railroad Co.* v. *Swett,* 45 Ill. 197; *Railroad Co.* v. *Welch,* 52 id. 186; *Perry* v. *Ricketts,* 55 id. 234; *Rolling Stock Co.* v. *Wilder,* 116 id. 100.

The first statement of the rule above (45 Ill. 197) has been modified to some extent, but the rule as modified holds the company to the highest degree of diligence consistent with the practical operation of its road,—and this is the rule as between the company and its servants. The rule applies to the relation of master and servant as well as carrier and passenger. Our court has made no distinction. *Railroad Co.* v. *Thompson,* 56 Ill. 138; *Railroad Co.* v. *Conroy,* 61 id. 163; *Railroad Co.* v. *Platt,* 89 id. 141; *Railroad Co.* v. *Conroy,* 68 id. 560.

Mr. Justice Wilkin delivered the opinion of the Court:

Appellee brought this action against appellant in the circuit court of McLean county, to recover damages for a personal injury. The case made by his declaration is, that the defendant, in attempting to repair its track at a place described, so negligently and unskillfully performed the work as to leave the same rough, uneven, and unsafe to its servants running trains thereon, and after it knew, or by proper diligence might have known, the fact, permitted it to so remain for the space of ten hours, failing and neglecting to notify the plaintiff thereof; that he, being a fireman on one of its locomotives passing over such defective track, by reason of it so being unsafe, he exercising due care, was thrown from the locomotive, receiving the injuries for which he sues. On a plea of not guilty a trial by jury resulted in a judgment for plaintiff for $3250, which has been affirmed by the Appellate Court.

The only ground of reversal urged in this court is the giving of the following instruction on behalf of plaintiff below:

3. "The jury are instructed, as a matter of law, that a railway company owes the duty to its employes to do all that human care, vigilance and foresight can do, consistently with the practical operation of its road, in providing a safe road, road-bed, track, ties and rail, and to keep the same in repair; and if you believe, from the evidence, that the plaintiff, while exercising reasonable care in the performance of his duty for the defendant, and without notice of any defects, received an injury resulting from the negligence of the defendant in either of the above particulars, they will find for the plaintiff and assess his damages, providing you also believe, from the evidence, that the conductor in charge of the train upon which the plaintiff was performing his duty, received no notice of any defects before the happening of the injury."

This instruction was evidently written without proper regard to the different degrees of care imposed by the law upon railroad companies as to employes and passengers. As to the former the general rule is, it must exercise all reasonable care and diligence to place its road-bed, track and structures in a safe condition, and keep them so; while as to the latter it is held to the highest degree of care in that regard. (1 Shearman & Redfield on Negligence, sec. 189.) It is true, language used in some of the opinions of this court seems to ignore this distinction, particularly in the case of *Toledo, Peoria and Warsaw Railway Co.* v. *Conroy*, 68 Ill. 560. That was an action to recover for the death of an engineer, alleged to have resulted from a defective bridge, and Chief Justice Breese, referring to prior decisions of the court, said: "The result of which ruling is, not to hold these companies as insurers that their road and appurtenances and instrumentalities are safe and in good condition, but they must do all that human care and vigilance and foresight can reasonably do, consistent with the modes of conveyance and the practical operation of the road, to put them in that condition and keep them so." This instruction does not, however, conform even to that language,

but says, unqualifiedly, that the company owes the duty to its employes to do all that human care, vigilance and foresight can do, consistently with the practical operation of its road, in providing, etc., omitting the word "*reasonably*," used above. An instruction omitting that qualification was condemned in *Pittsburg, Cincinnati and St. Louis Railway Co. v. Thompson,* 56 Ill. 138, which was an action by a passenger. The true rule in such cases is there stated to be that announced in *Tuller* v. *Talbott,* 23 Ill. 357, viz., "that the carrier shall do all that human care, vigilance and foresight can *reasonably* do, consistently with the mode of conveyance and the practical operation of the road." There is a marked difference in the duty imposed by the rule thus announced and that stated in this instruction. A railroad company doing all that human care, vigilance and foresight can do, consistently with the practical operation of its road, in providing a safe road-bed, track, etc., could be required to make it of solid masonry, with ties of iron or stone, but ordinarily it would be unreasonable to require it to do so. *Pittsburg, Cincinnati and St. Louis Railway Co.* v. *Thompson, supra.*

We think, however, the language above quoted from the *Conroy case, supra,* was inadvertently used, as applied to the case of an employe, and should be overruled. The distinction pointed out in the foregoing citation from Shearman & Redfield has been frequently recognized by this court since that decision was rendered. That as between master and servant, generally, the law only imposes upon the master the duty of exercising reasonable care in supplying the servant with proper and safe instrumentalities for the performance of his duties, and maintaining the same, and in providing a reasonably safe place in which to work, is too well settled to call for the citation of authorities, and that rule has been frequently applied by this and other courts in actions between railroad companies and employes for injuries resulting from defects in machinery, appliances, structures, etc. Thus it was said in *Chicago,*

39—148 ILL.

*Rock Island and Pacific Railroad Co.* v. *Lonergan*, 118 Ill. 48 : "It is also a well settled proposition in this and the courts of other States, that a railroad company is not bound to furnish absolutely safe machinery for its employes. The law imposes upon the company the obligation to use reasonable and ordinary care and diligence in providing suitable and safe machinery, tracks and switches, engines, etc., for the use of those engaged in its service." Keeping in mind that in determining what is reasonable care in a given case, the nature of the employment, the machinery and appliances used, and the danger to which the employe is exposed, are always to be considered, the rule thus announced is a just one, and easy of application. We are therefore of the opinion that the giving of said instruction was error.

It remains, however, to be considered whether, under all the facts of this case, that error should work a reversal of the judgment below. It is admitted that on the 7th day of May, 1890, employes of the defendant surfaced its track at the place named in the declaration, raising it about six inches, which work was completed near five o'clock on the evening of that day, and that the section men gave no further attention to it until after the accident on the morning of the 9th, at which time the foreman says he found two of the joints out of place, viz., sunk about two inches, but he did not consider it then unsafe. About two o'clock on the morning of the 9th the locomotive on which plaintiff was firing, attached to a meat train, passed over the newly surfaced track, and, as he testifies, he was thrown from the engine "by reason of the rough place in the track." He says : "It was very rough, and caused the engine to roll terribly, and threw me off." He was found near the track immediately after the train had passed the place in question, unconscious, and taken back to Jacksonville, where he was placed in a hospital. It is not denied, nor can there be any serious question from the evidence, but that he was, at least temporarily, severely injured. That

the track was, to a greater or less extent, out of repair on the 8th, is shown by all the testimony, and we think it was clearly proved that it was in an unsafe condition from about noon of that day to the time of the accident.

W. K. Morly, division superintendent of the defendant for that part of its road, testified as follows: "I pass over the road between Roodhouse and Jacksonville several times a week. I passed over it on the evening of May 8, 1890, on the train that Mr. Ingalls was engineer on. My attention was called to a piece of rough track a short distance south of Jacksonville. I noticed that the train rolled as it went over. Think I was on the rear car. We got to Jacksonville at 9:15. I sent a message to the train-master at Roodhouse, instructing him to notify all trains to run slow over that track. * * * The substance of it was to notify trains to run slow over that place. The train that Mr. Kerr was on that night was called the meat train. It was a fast run. The train-sheet shows that it left Roodhouse at 1:10 in the night. The message was sent from Jacksonville at 9:15. It is twenty-one miles from Jacksonville to Roodhouse. It would take forty or fifty minutes for the meat train to run from Roodhouse to Jacksonville. Didn't see any red lights when I came over the track that night. Didn't order any put out after I got to Jacksonville. I know rule 35 of the company. It would be the business of the section foreman to place those signals if it was a dangerous place." Cross-examination: "From noon on the 8th, up to the time plaintiff was injured, fourteen trains passed over that track. None of them reported it. Five of those trains were passenger trains, the balance were dead freight and live freight. One of the freight trains was authorized to carry passengers. I didn't consider this track impassable. There was nothing there requiring a train to stop. The utmost that would be required would be to slow up and come over a little slower." While he testified, on behalf of the defendant, that he took the action he did concerning the track as an extraordinary

precaution, and not because he considered it unsafe, he said on cross-examination: "When I say unsafe, I mean to say there was no danger of a derailment of the train. It might be dangerous in other respects besides derailment. It would depend upon the roughness and speed at which the train was going, somewhat. If it was going at a high rate of speed it would be more dangerous than if it was going slowly over a rough piece of track. I did think it was sufficiently out of repair to telegraph about."

The engineer, Ingalls, in charge of the locomotive attached to the train on which this superintendent was riding, testified: "It set the engine to rolling very badly. * * * I got over it all right, and went to the conductor and asked him if he was going to report the place, and he said that Mr. Morly was on the train and would attend to it. I considered it dangerous."

Other train men who passed over the place during the afternoon and night of the 8th and morning of the 9th testified that the track was rough, and some of them described it as being very much so. It is true that other employes of the defendant say that they did not consider it unsafe or dangerous, but it is clear, beyond controversy, as shown by the testimony of Mr. Morly himself, that several hours before plaintiff was injured he knew it was out of repair, and that he took steps to notify those whose duty it was to take trains over it, of that fact. That the track was not reasonably safe at that time admits of no doubt. True, it was not *impassable*, and may not have been absolutely *dangerous;* but a railroad track out of repair to the extent of giving trains and locomotives the motion described by Mr. Morly and other witnesses, can not be said to be reasonably safe to employes whose duty it is to run trains over it at a high rate of speed. Having shown the unsafe condition of the track, and knowledge of that fact being admitted by the defendant's superintendent, plaintiff's case no longer depended upon the degree of care which the defendant was required to exercise in providing a

safe road-bed, etc., and keeping the same in repair. It then became, and the real question in the case was, whether or not proper notice was given, by signals or otherwise, of the danger. That the superintendent promptly gave orders that those in charge of all trains to pass over the road should be notified to run slow over that place was not controverted, but it was denied that his order was obeyed, or that the conductor or other person on plaintiff's train received any such notice or had knowledge of the condition of the track; and unquestionably the jury found that fact in favor of the plaintiff, as they well might from the evidence on that issue. They were instructed, at the request of the defendant, that if the conductor of such train received the notice, or through his own neglect failed to receive it, and if it had been obeyed by him or others in charge of the train the hurt to plaintiff would not have happened, their verdict should be for the defendant. Under that instruction, no matter how defective the track may have been, if plaintiff was injured through the disobedience of his fellow train men (fellow-servants) to orders to run slow over it, he could not recover. The jury were also instructed, at the instance of the defendant, that if they believed, from the evidence, the track was reasonably safe for meat trains to run upon at their ordinary speed, they should find for the defendant.

After carefully considering this record we are convinced that the instruction in question, though erroneous, did not injuriously affect the defendant, and that it should not therefore be held reversible error.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*