Dolores Arndt, a Minor, by Leo Arndt, her Father and
Next Friend, Appellee, v. Riverview Park Com-
pany, Appellant.

Gen. No. 34,407.

Heard in the first division of this court for the first district at the June term, 1930. Opinion filed December 1, 1930.

Eugene P. Kealy, for appellant; Patrick L. McArdle, of counsel.

Arne B. Hummeland, for appellee.

Mr. Presiding Justice Matchett delivered the opinion of the court.

This is an appeal by defendant from a judgment in the sum of $5,000 entered upon the verdict of a jury in an action on the case for personal injuries, motions for a new trial and in arrest having been overruled.

Defendant operates an amusement park, and one of the amusement devices operated in connection therewith is usually described as a "merry-go-round." In a general way it consists of a circular revolving platform on which are installed in rows chariots and what are described as stationary and plunging horses. Each horse is equipped with a bridle, a saddle and a pair of stirrups and is permanently fastened to the floor of the merry-go-round by means of an iron rod attached to the floor passing upwards perpendicularly through the neck of the horse in front of the saddle. This rod serves the double purpose of holding the horse firm and providing a means by which the rider may hold on while the horse is in motion.

The device was designed primarily for the use of children and about it at a convenient distance were benches upon which parents and attendants of the children were accustomed to rest while the children enjoyed the rides. It was the usual practice in the operation of this device that when the passengers were seated an attendant would ring a bell and a lever would be thrown which would start the merry-go-round in motion, at first slowly but increasing in speed until it moved at the rate of six or seven revolutions a minute.

The higher speed was attained, of course, by the outside horses at the edge of the platform, and the speed of the horses on the inner part of the platform was less in proportion to the distance of the same from the outer circumference of the platform. The stationary horses move with the platform as it revolves. The moving or plunging of the horses also had an up and down movement which increased with the speed at which the whole device was moved.

After two or three revolutions it was the usual practice for an attendant to go around the platform between the rows of horses and collect the tickets which patrons were required to purchase as evidence of their right to ride.

Plaintiff, ten years of age, with her father, mother and brother, then three years of age and called ''Junior,'' went to the amusement park on the day of the accident: They were accompanied by a friend, Mrs. Brackey, her three-year-old child, Maybelle, and her niece, Evelyn Kunkel, who was then ten years of age.

Mrs. Arndt paid for the admission of all these and purchased four tickets entitling the children to rides.

Plaintiff approached the merry-go-round and mounted one of the horses. Mrs. Arndt took her three-year-old child and set him on the same horse

with and in front of plaintiff. She put plaintiff's feet in the stirrups attached to the saddle, but there were no stirrups for the little brother. Mrs. Arndt, however, saw to it that he took hold of the bridle of the horse. Plaintiff then put her arms about her brother under his arms, and Mrs. Arndt gave the tickets to plaintiff. She then got off hurriedly just as the merry-go-round started up and seated herself with Mrs. Brackey on one of the benches, from which they watched the children as they rode about. As plaintiff went round she apparently released one arm from about her brother and holding onto him with the other, waved to her mother. After the device had made several revolutions and when plaintiff had passed beyond her view, the mother heard a scream and then saw plaintiff on the ground, to which she had been thrown by the motion of the device. There seems to be no doubt of the serious nature of the injuries plaintiff sustained.

All seats on the platform of the device, 72 in number, were occupied. Two attendants, servants of defendant, supervised the operation of the device. One of these was taking tickets and the other sat upon one of the benches. The latter testified that he did not see the accident. There were straps on the horses used at times for the purpose of fastening the rider to the horse. Neither plaintiff nor her brother was so strapped.

When the attendant took plaintiff's ticket (according to the evidence of Evelyn Kunkel) her baby brother was slipping off the horse towards the outside, and Evelyn's evidence tends to show that in the endeavor to hold her brother, who weighed 50 pounds, plaintiff lost her balance and was thrown. Plaintiff fell when the device was moving at its highest speed and was thrown head first through the air, her body moving in an inclined plane and directly out at an angle from the merry-go-round.

The foregoing facts are practically uncontradicted. At least the jury could properly believe from the evidence presented that the facts are as above stated. At the close of all the evidence defendant moved for an instructed verdict and now urges upon this appeal that the court erred in refusing to give that instruction as requested.

It is urged that plaintiff was guilty of contributory negligence and that the peremptory instruction in defendant's favor should for that reason have been given. It is argued that the evidence indicates that plaintiff was a bright child and conscious of the methods employed in the operation of this device; that she had been placed by her mother in charge of her three-year-old brother, and that in waving to her mother she necessarily released her hold upon the brother, thus leaving him unprotected against the centrifugal force which was operating to move the child towards the outside of the device and into a position of danger. It is said that the mother and the plaintiff in waving to each other were "indiscreet" and that this was the only unusual occurrence in the "whole business"; that when the merry-go-round started the little brother was safely held in plaintiff's arms; that at the time of waving to her mother she released her hold upon him, thus allowing him to slip; that she fell or was thrown in trying to save him, and that in this way she was responsible for her own injuries. *McAllister v. Jung,* 112 Ill. App. 138, and *Koehler v. Chicago City Ry. Co.,* 166 Ill. App. 571, are cited as cases holding that children ten years of age may be guilty of such contributory negligence as to bar an action by them for injuries received.

Those cases are easily distinguishable in many respects. Here, defendant operated a device which was attractive to children of tender years and concerning which their patronage was solicited. That fact is important and may not be disregarded. Neither plaintiff

nor her little brother was a trespasser, but they were upon the merry-go-round by express invitation to enjoy the ride and thereby obtain a novel and unusual experience. The confidence that children repose to a marked degree in old persons would lead plaintiff to believe that a place operated for children generally and superintended by adult persons would be free from danger. The parents too might well suppose, since defendant was licensed by public authority to operate a device of this kind, that their children might enjoy themselves with safety in such place.

The law recognizes the difficulty of defining with precision the adolescent negligence which will bar recovery. This plaintiff was a child; she thought as a child; she understood as a child; she had not put away childish things. As to adults, the question of contributory negligence is usually for the jury. Much more is it a question for the jury as to those who are not adults. In *Maskaliunas v. Chicago & Western Indiana R. Co.*, 318 Ill. 142, the rule which must control in this jurisdiction is stated as follows:

"The law is clearly established by great weight of authority, that between the ages of seven and fourteen the question of culpability of the child is an open question of fact and must be left to the jury to determine, taking into consideration the age, capacity, intelligence and experience of the child."

The court we think did not err in submitting the question of plaintiff's contributory negligence to the jury.

It is urged again, however, that the instruction for defendant should have been given because there was no proof of any negligent act by defendant as alleged in plaintiff's declaration. The argument of defendant upon this point proceeds upon the theory that the law as to the duty of common carriers to their passengers is applicable. The rule to be applied as to common carriers is set forth in many cases cited, all of which

hold the rule to be that the duty put upon such carriers is to do all that human care, vigilance and foresight can reasonably do consistent with the mode of conveyance and the practical operation of the business, to the end that passengers may not be injured. That rule is stated in the early case of *Pittsburgh, Cincinnati & St. L. Ry. Co. v. Thompson*, 56 Ill. 138, and, we believe, has been ever since consistently followed by the courts of this jurisdiction. *Chicago & Alton R. Co. v. Arnol*, 144 Ill. 261; *Chicago & Alton R. Co. v. Kerr*, 148 Ill. 605. The rule was applied in an action by a passenger upon a scenic railway at an amusement resort in *O'Callaghan v. Dellwood Park Co.*, 242 Ill. 336.

Defendant summarizes the situation from its standpoint by the statement that the carrier, with the conveyance before the passenger, says, "I'll carry you in this conveyance just as it stands." Upon this theory it is argued that many of the specifications of negligence pleaded in the declaration are not actionable at law; for example, questions as to the manner in which the device, was constructed and as to whether the horses were equipped with straps, it is said are not in issue, citing *Chicago & Eastern Illinois R. Co. v. Driscoll*, 176 Ill. 330. It is said that the high degree of care required must be limited by the mode of conveyance adopted and used by the passenger and by the conditions and circumstances which were necessarily attendant upon the operation of the device. *Murphy v. White City Amusement Co.*, 242 Ill. App. 56; *Sullivan v. Ridgway Const. Co.*, 236 Mass. 75; *Pointer v. Mountain Ry. Co.*, 269 Mo. 104; *Carlin v. Krout*, 142 Md. 140; *Olsen v. Riverview Park Co.*, 252 Ill. App. 638, are cited and relied on in this connection.

In those cases the courts were called upon to pass on facts which showed that an adult person with full capacity to act in his own behalf voluntarily contracted with reference to amusement devices quite different in their nature from the one which we have described,

and they are therefore distinguishable. Although we hold that under the rule as laid down in those cases, the question of defendant's liability here was one for the jury. In *Brown v. Rhoades,* 126 Me. 186, 137 Atl. 58, the authorities from different jurisdictions, which consider the question as to the duty that a defendant operator of an amusement device owes to minor children whose patronage he has invited, are reviewed. That case in substance holds that reasonable supervision of the device either by the operator himself or by an attendant is a duty which devolves upon the operator, for neglect of which the proprietor will be held liable. We think that duty devolved upon defendant under the circumstances which appear here. The jury might have well believed that if proper supervision had been exercised, plaintiff and her infant brother would not have been allowed to ride together upon this horse as they were permitted to do. The danger in doing so ought certainly to have been appreciated by the servants of defendant in charge, and the ride should have been forbidden under the circumstances, unless these children were firmly fastened to the horse in such a way as would prevent falling. Irrespective of the other negligence alleged, this, we think, justified the submission of the cause to the jury.

It is urged that the court erred in giving the first instruction requested by plaintiff, which told the jurors that even though they believed from the evidence that the mother of plaintiff was guilty of negligence on the occasion in question, yet under the law, such negligence, if any, could not be attributed to plaintiff. It is argued that this instruction presented an abstract proposition of law which was not applicable and therefore should not have been given to the jury. *Garvey v. Chicago Rys. Co.,* 339 Ill. 276, is cited to that point. We think the criticism is without merit. A similar instruction was approved by the Supreme Court in

*Perryman v. Chicago City R. Co.,* 242 Ill. 269, 271, and the Appellate Courts have often approved similar instructions. *Vanek v. Chicago City Ry. Co.,* 210 Ill. App. 148; *Deheave v. Hines,* 217 Ill. App. 427.

It is also urged that the second instruction, by which the jury was told that it was the duty of defendant, by its servants in operating the merry-go-round, to exercise the highest degree of care and caution for the safety of its passengers and to do all that human foresight and vigilance could reasonably do consistent with the mode of conveyance and the practical operation of said conveyance to prevent accidents to its passengers, was erroneous. A similar instruction has been approved by the Supreme Court in *O'Callaghan v. Dellwood Park Co.,* 242 Ill. 336.

It is also urged that the fourth instruction given at the request of plaintiff was erroneous. By that instruction the jury was told that the law did not require of plaintiff the exercise of an extraordinary degree of care; that all that was required of her was the exercise of ordinary care, and that this ordinary care depended upon the circumstances of each particular case and was such care as a person of ordinary prudence and intelligence would usually exercise under the same or similar circumstances. Objections are made that this instruction also stated an abstract proposition of law; that it was negative in form and would only confuse the jury. The objections are without merit. A similar instruction was approved in *Elgin, J. & E. R. Co. v. Lawlor,* 229 Ill. 621.

It is also urged that the sixth instruction given at the request of plaintiff was erroneous. That instruction told the jury that in determining the amount of damages, if any, plaintiff was entitled to recover in this case, the jury had a right to and should consider all the facts and circumstances attending the injury appearing from the evidence, the nature and extent of

plaintiff's physical injuries, if any, so far as the same are shown by the evidence, her bodily suffering, if any, resulting from such physical injuries, and such further suffering and loss of health, if any, as the jury might believe from the evidence she has sustained by reason of such injuries, and that the jury might find for her such sum as in their judgment, under the evidence and instructions of the court, would be a fair compensation for her injuries, if any, so far as such damages and injuries, if any, were claimed and alleged in the declaration and proved by a preponderance of the evidence. It is argued that this instruction has been recently condemned by the Supreme Court in *Garvey v. Chicago Rys. Co.,* 339 Ill. 275. The instruction here, however, differs materially from the one considered in that case. Moreover, the opinion of the Supreme Court stated that the instruction criticized "might not in itself call for reversal in the case." Substantially, this instruction seems to have been approved by the Supreme Court in *Chicago & M. Electric R. Co. v. Ullrich,* 213 Ill. 170; *Parmelee Co. v. Wheelock,* 224 Ill. 194; *Brennan v. City of Streator,* 256 Ill. 468, and by the Appellate Court in *Caughey v. Peoria Ry. Co.,* 164 Ill. App. 455. The instruction referred to the damages to be allowed, and the same are not, in our opinion, excessive.

It is also urged that the court erred in giving plaintiff's seventh instruction, by which the jury was told that plaintiff was not bound to prove her case beyond a reasonable doubt; that she was bound only to prove it by a preponderance of the evidence. It is said that the instruction was entirely uncalled for, is a pure abstraction and is negative, and for these reasons it is subject to criticism. This instruction, however, has been approved in *Chicago Consolidated Traction Co. v. Schritter,* 222 Ill. 364, and *Pierson v. Lyon & Healy,* 243 Ill. 370.

We find no reversible error in the record, and the judgment is therefore affirmed.

*Affirmed.*

McSurely and O'Connor, JJ., concur.