FRANCIS PERRYMAN, Appellee, *vs.* THE CHICAGO CITY RAILWAY COMPANY, Appellant.

*Opinion filed October 26, 1909—Rehearing denied Dec. 8, 1909.*

1. NEGLIGENCE—*negligence of a brother cannot be imputed to young child.* The negligence of an eight-year old boy in caring for his four-year old brother upon the street cannot be imputed to the latter so as to defeat a recovery against one who negligently injures him.

2. SAME—*measure of motorman's duty to young child.* Where a motorman on a street car observes a young child near the track having the apparent intention of crossing ahead of the car, it is the duty of the motorman to exercise great care to avoid injuring him, and if he negligently runs the car against the child, or if through his negligence the child is brought into collision with the car, the street railway company is liable.

3. SAME—*negligence may consist in failing to observe child until too late to stop.* If a motorman on a street car, through negligent inattention to the operation of the car, fails to observe a young child standing near the track and apparently intending to cross until it is too late to avoid injuring him, the street railway company is liable, even though the front of the car passes the child before he collides with the car.

4. INSTRUCTIONS—*when an instruction as to effect of plaintiff's running into car is properly refused.* An instruction stating that if the plaintiff (a four-year old child) "ran into the side of the car in question, and that said car did not strike or run against the plaintiff but the plaintiff ran against and struck the side of the car, then the jury must find the defendant not guilty," is properly refused, where there is evidence that the motorman was watching

a fight on the sidewalk and failed to observe the situation and intention of the child until too late to stop.

5. SAME—*when instruction defining negligence is proper.* An instruction stating that "negligence is the omission to do something which a reasonable man, guided by those ordinary considerations which ordinarily regulate human affairs, would do, or the doing of something which a prudent and reasonable man would not do," is substantially correct, which is all that the law requires in an instruction.

6. SAME—*when instruction as to negligence not being imputed to small child is not erroneous.* An instruction stating that the negligence of the plaintiff's brother in caring for him on the street could not be imputed to the plaintiff and that "it is not a defense to this suit," is not erroneous on the ground that it might lead the jury to believe that, even if such negligence was the proximate cause of the injury, the jury might disregard it and hold the defendant liable even though it was not negligent.

7. TRIAL—*when action against street railway company for negligence is properly submitted to jury.* An action against a street railway company for injury to a four-year old boy is properly submitted to the jury where the evidence in his favor tends to show that he was crossing the street with his eight-year old brother, who ran across the track ahead of the car and beckoned the plaintiff, who had stopped near the track, to follow, and that the motorman of the car was looking at a fight on the sidewalk and did not see plaintiff in time to stop, though the car was running slowly.

8. EVIDENCE—*what evidence is sufficiently definite as to time and place.* Testimony that the motorman on the grip-car which struck a young child was looking north and west and not in front of the car after leaving a certain street, is sufficiently definite as to the time and place where the motorman's inattention occurred where the place where the child was struck was only about twenty feet from where the car started up after stopping at such street.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding.

JOHN E. KEHOE, and C. LEROY BROWN, for appellant.

JAMES C. MCSHANE, for appellee.

Mr. Justice Hand delivered the opinion of the court:

This was an action on the case commenced by the appellee against the appellant, in the superior court of Cook county, to recover damages for a personal injury alleged to have been sustained by the appellee through the negligence of the appellant. The jury returned a verdict for the sum of $9000 in favor of the appellee, upon which judgment was rendered, which judgment was affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

The case was tried upon a declaration containing one count, which, in substance, alleged that on the 28th day of August, 1905, the defendant was possessed of and was operating a certain street railway extending longitudinally upon and along State street, one of the public streets of the city of Chicago, upon which railway it then and there operated certain street cars; that the plaintiff was then and there a minor of tender years, to-wit, four years of age, and was then and there traveling westwardly across said railway tracks upon said State street, between Taylor street and Harmon court, in said city, and while so doing, and while in the exercise of such care as was reasonably to be expected of one of his years and intelligence, the defendant, through certain of its servants, then and there managed said street cars in such a reckless, careless and negligent manner that the same then and there "ran against or was brought into collision" with the plaintiff and he was then and there knocked down and run over by said street cars, and his right foot was run over and so crushed, broken and mangled as to require amputation, whereby he suffered great injury, etc.

The evidence was conflicting, but fairly tended to show that the appellant was operating a double track street railway in State street, in the city of Chicago; that State street runs north and south, and that the south-bound cars run

upon the west track and the north-bound cars upon the east track; that Taylor street runs into State street from the west and Harmon court runs into State street from the east but neither of said streets crosses State street; that Taylor street, where it terminates at State street, is two hundred and four feet north of where Harmon court terminates at State street; that the plaintiff, at the time of his injury, was about four years of age and lived with his parents, who reside upon the west side of State street, a short distance south of Taylor street; that there was a candy store located upon the east side of State street, a few doors north of Harmon court; that the plaintiff, in company with his brother, who was about eight years of age, had crossed State street from their home to said candy store; that about four o'clock on the afternoon of the injury the two boys started to re-cross State street from the candy store to their home; that a train of street cars on State street, consisting of a grip and two trailers, coming from the north, stopped at the Taylor street crossing; that at about the time the train started south from the Taylor street crossing the boys approached the railway tracks from the east, in State street; that the larger boy ran across the tracks in front of the approaching cars; that the plaintiff approached the tracks, but when between the tracks he hesitated and momentarily stopped, when his brother motioned to him and called to him to come on, when he started to run across the tracks and was struck by the fender upon the front of the grip-car or by the running-board thereon and was knocked down and thrown under the grip-car, and his right foot was crushed so as to necessitate amputation of his leg below the knee; that the cars, at the time of the accident, were going at a slow rate of speed; that as the cars left the Taylor street crossing the gripman was apparently looking west and north at some men who were engaged in an altercation near the north-west corner of Taylor and State streets and did not see the plaintiff until he was near the

cars, and although, when the approaching cars were a few feet from the plaintiff, he hollered at the plaintiff and did what he could to stop the cars, he could not stop them in time to prevent a collision with the plaintiff.

The contention of the appellant is, that the plaintiff was standing in State street, east of the tracks, as the cars approached him from the north, and that he suddenly and without warning to the gripman ran against the moving grip-car and was knocked down and was injured.

The grounds of reversal urged in this court are the giving of the twelfth and fourteenth instructions to the jury, offered upon behalf of the appellee, which read as follows:

12. "The court instructs the jury that even if you believe, from the evidence, that the plaintiff's mother was guilty of negligence in permitting the plaintiff to go upon the street or that his brother was guilty of negligence in not taking proper care of him while upon the street, still such negligence, if any, upon their part cannot be charged against the plaintiff, and it is not a defense to this suit.

14. "The jury are further instructed that negligence is the omission to do something which a reasonable man, guided by those ordinary considerations which ordinarily regulate human affairs, would do or the doing of something which a prudent and reasonable man would not do;"
—and the refusal of the twenty-third instruction offered on behalf of the appellant, which reads as follows:

23. "If the jury believe, from the evidence, that plaintiff ran into the side of the car in question, and that said car did not strike or run against the plaintiff but that the said plaintiff ran against and struck the side of the car, then the jury must find the defendant not guilty;"
—and the action of the court in admitting evidence over its objection.

We do not think the court erred in giving to the jury appellee's twelfth instruction. The jury would, we think, clearly understand from that instruction that all the court

2 42—18

intended to inform them thereby was that the negligence of the brother of the plaintiff, if any, in taking care of the plaintiff while upon the street could not be imputed to the plaintiff, and such is the settled law of this State. (*Chicago City Railway Co.* v. *Wilcox,* 138 Ill. 370; *City of Pekin* v. *McMahon,* 154 id. 141; *Elgin, Joliet and Eastern Railway Co.* v. *Raymond,* 148 id. 241; *Chicago City Railway Co.* v. *Tuohy,* 196 id. 410; *Richardson* v. *Nelson,* 221 id. 254.) The appellant concedes that the negligence of the plaintiff's brother could not be imputed to him, but urges that the jury, by the use of the words found in the instruction, "and it is not a defense to this suit," would be likely to be led to believe that although they believed, from the evidence, that the action of the brother in calling and beckoning to the plaintiff to cross the street in front of the approaching cars, and not the negligence of the gripman in failing to observe the plaintiff was approaching and about to cross the tracks in front of the cars, was the proximate cause of the injury, still they would have the right to disregard the conduct of the brother and find the appellant guilty, and as the instruction stated the negligence of the brother would not be a defense to the suit, the jury might have been misled thereby and it should not have been given. It is also contended that the instruction singled out the conduct of the brother while upon the street, and informed the jury that such conduct would not relieve the defendant of liability, which was not permissible. The jury were repeatedly informed by other instructions given to them, which they were directed to consider as one series, that the appellant could not be held liable unless it had been proven guilty of the negligence charged in the declaration and which was the proximate cause of plaintiff's injury. We cannot agree with the contention of the appellant, and are of the opinion that the court did not err in giving to the jury said instruction.

It is urged that the court erred in giving to the jury the appellee's fourteenth instruction, in this: that the court did not properly define what constitutes actionable negligence therein. The definition of negligence therein contained has been approved by this court in numerous cases, among which are *Chicago, Burlington and Quincy Railroad Co.* v. *Johnson,* 103 Ill. 512, *Wolff Manf. Co.* v. *Wilson,* 152 id. 9, and *Pittsburg, Fort Wayne and Chicago Railway Co.* v. *Callaghan,* 157 id. 406, and we think this instruction substantially correct,—and that is all that the law requires in an instruction,—and that it could not have misled the jury.

We are also of the opinion that the court did not err in declining to give to the jury appellant's twenty-third instruction. To have given that instruction would have been to inform the jury that if they believed the appellee ran into the side of said car he could not recover, regardless of the fact that the injury of the appellee was caused by the negligence of the appellant's gripman in failing to observe the approach of the appellee to its tracks and his apparent intention to cross the tracks in front of the cars under the gripman's control as they passed south on State street from Taylor street. It must be admitted that if the plaintiff was standing still a sufficient distance from the tracks to enable the cars to pass him without coming in contact with him, and there was nothing in his action which indicated to the gripman that he was about to attempt to cross the tracks in front of the approaching cars, and that without warning to the gripman he suddenly and unexpectedly started to cross the tracks in front of the approaching cars and was injured, there could be no recovery. (*Rack* v. *Chicago City Railway Co.* 173 Ill. 289.) If, however, the plaintiff was approaching the tracks and it was reasonably apparent to the gripman that the plaintiff intended to attempt to cross the tracks in front of the approaching cars and he failed to stop the train, but, as the declaration avers, recklessly, carelessly and negligently failed to stop the cars but ran the

same against the plaintiff, or the paintiff, by reason of such reckless, careless and negligent conduct, was brought into collision with said cars, then the appellant would have been liable; (*Chicago West Division Railway Co.* v. *Ryan,* 131 Ill. 474; *Chicago City Railway Co.* v. *Tuohy, supra;*) and if the gripman failed to discover the situation of the plaintiff and his intention to cross the tracks of the approaching train immediately before he was injured and in time to avoid the injury because of lack of attention to the operation of the cars, in consequence of his attention being distracted by what was occurring upon the adjoining street corner, and the plaintiff, in consequence thereof, was injured, the appellant would equally be liable; and this would be true although the front of the train had passed the plaintiff and he ran or came in collision with the defendant's cars and was injured. In the *Tuohy case, supra,* it was said (p. 416) : "When a young child is discovered approaching the car track with the apparent intention of crossing in front of a moving car, or is discovered on the track, it is certainly the duty of the gripman or motorman to exercise a high degree of diligence in order to prevent injury to the child." And in the *Ryan case* (p. 479) the following extract from Shearman and Redfield on the Law of Negligence (vol. 1, sec. 99, 4th ed.) was quoted with approval: "It is not necessary that the defendant should actually know of the danger to which plaintiff is exposed. It is enough if he has sufficient notice or belief to put a prudent man on the alert and he does not take such precautions as a prudent man would take under similar notice or belief." We think the instruction was properly refused.

As to the last ground of reversal, it is urged that the court erred in permitting the witness Ash to state to the jury that the gripman was looking north and west, and not in front of the cars, after the train left Taylor street, on the ground that he did not definitely fix the location of the cars at the time he testified he saw the gripman look in

the direction indicated, as, it is said, he possibly saw the gripman look in a north-westerly direction after the accident had occurred. The distance from Taylor street to Harmon court was two hundred and four feet. The train was eighty feet in length, and the rear of the train stood at or near the south line of Taylor street at the time the stop was made at that street, and the accident occurred not far from half way between Harmon court and Taylor street, upon State street, and the train stopped immediately succeeding the injury. It is therefore apparent that the gripman, if Ash's testimony was true, looked north and west at a time after the train started south from the stop at Taylor street and before it reached the place where the accident occurred, and the distance between the stop at Taylor street and the place of the accident was so short and the time required for the cars to traverse that distance so limited that it was material to show that the gripman's attention was distracted from the operation of the cars at any time while the cars were traversing the distance from the stop at Taylor street to the place on State street where the accident occurred. Other witnesses were examined on the same point and testified substantially as did Ash, without objection. George Williams testified: "When they got between the two tracks the little boy stopped and the other one went on across. The little boy stood there. I saw a train coming south and saw what the gripman was doing. When I first saw the gripman of the south-bound car he was coming on that side of Taylor street. He was looking back at a fight occurring on the north-west corner of Taylor street. * * * The east corner of the fender hit the little boy first and slid over him." Katie Newson testified: "They started together, but the oldest boy ran across,—got across first and stood on the west side of the car. The small boy stopped near the edge of the track and his brother beckoned for him to come across. The little boy stopped near the track that he was hurt on. The older boy had crossed the

track but wasn't on the sidewalk when he stopped and called to his little brother. He was beckoning him to come on. * * * The little fellow traveled from where he started out to the place where he stood at kind of a little trot, as a little child would. I can't say exactly how long he stood there before he was struck, but it was a few seconds. When I seen the gripman he was looking across the street." Hattie Wilson testified: "This car seemed to me that it stopped at Taylor street, and the little boy then run up to the track but wouldn't go across. I guess he noticed the car coming, or something like that, and he wouldn't go across, and then the motorman—brakeman—was looking back or something, and just as he turned to the little boy he was to the track. The gripman was looking to the north,—north-west. There seemed to be some words between two young men of some kind on the other side of the street." We think the evidence objected to was material and sufficiently definite as to time and place.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*