PATRICK GRANNON, Defendant in Error, vs. THE DONK BROS. COAL AND COKE COMPANY, Plaintiff in Error.

*Opinion filed June 18, 1913—Rehearing denied October 15, 1913.*

1. MASTER AND SERVANT—*rule where master directs servant to work in a place of known danger.* Where the master directs the servant to work in a place of known danger, and the servant, while obeying such order, is injured, he is entitled to recover damages for his injury if he was himself in the exercise of due care and the danger was not so apparent that no reasonable man would undertake to obey the order given.

2. SAME—*what action by foreman amounts to an assurance of safety.* Where an assistant mine manager, after personally examining the roof of an entry where a fall had occurred, unqualifiedly orders the men under his direction to clean up the fall, such order amounts to an implied assurance to the men that the roof is safe.

3. SAME—*when a recovery is not defeated though servant had some knowledge of danger.* If, in obeying the order of the master to do certain work, the servant acts with the degree of diligence which an ordinarily prudent man would exercise under the circumstances, he is not barred of his right of recovery for injury by the fact that he had some knowledge of the danger attending the work.

4. MINES—*provision of the act requiring a miner to examine the roof of his working place construed.* Sub-clause (c) of paragraph 6 of section 23 of the Mining act of 1911, requiring every miner to examine the roof of his working place, applies to employees who have a fixed working place in the mine, but it has no application to employees who are required to work all over the mine, in one place and another, wherever falls may occur.

5. SAME—*when defense that miner is not entitled to benefit of rule respecting place of work cannot be sustained.* The defense that a miner employed to remove falls and make dangerous places safe is not entitled to the benefit of the rule requiring the master to exercise reasonable care to provide a reasonably safe place for his servant to work cannot be sustained, where the declaration is not based upon a violation of such rule but upon the fact that the master, after examining the place of work and impliedly assuring the servant of its safety, negligently ordered him to work there.

6. APPEALS AND ERRORS—*when one good count will support a judgment.* One good count which is supported by the evidence, and concerning which there is no reversible error, is sufficient to support a judgment in an action for personal injury.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

WISE, KEEFE & WHEELER, and WHITNEL, BROWNING & GILLESPIE, (MASTIN & SHERLOCK, of counsel,) for plaintiff in error.

WEBB & WEBB, and BARTHEL, FARMER & KLINGEL, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Patrick Grannon recovered a judgment in the circuit court of St. Clair county against the Donk Bros. Coal and Coke Company for $15,000 for a personal injury caused by a fall of loose rock, slate, etc., from the roof of the coal mine of defendant below located near Troy, Illinois, on or about June 17, 1911. The judgment below having been affirmed by the Appellate Court for the Fourth District, the record has been brought to this court for further review as a return to a writ of *certiorari*.

The original declaration consisted of one count, which alleged common law negligence. By this count defendant in error alleged that he had been in the employ of plaintiff in error as a timber-man and a slate-shifter, and that it was his duty to clean up and remove falls of slate, rock, etc., in the roadways in plaintiff in error's mine; that on or about the 16th of July, 1911, a fall had occurred in one of the entries or roadways of the mine which was known as the "run-around;" that on the morning after the fall had occurred the assistant mine manager took defendant in error to said fall for the purpose of having him assist in cleaning up and removing the same, and that before defendant in error commenced work the assistant mine manager inspected

the roof at the place of said fall to ascertain whether the same was safe, and after such examination told defendant in error and other workmen that the roof was secure and directed them to proceed to clean up and remove the fall; that the defendant in error, relying upon the assurances of safety given by the assistant mine manager, proceeded to clean up the fall, and while so doing, and while in the exercise of due care for his own safety, and without knowledge or means of knowing of the unsafe condition of the roof above him, a large quantity of loose material fell from the roof down upon defendant in error, permanently and seriously injuring him. Subsequently five additional counts were filed, the first three of which are based upon section 21 of the Mines act of 1911, and charged a violation of that section by a failure to inspect all places where men were required to pass or work and to observe whether there were any recent falls or dangerous roadways; a failure to inscribe in some suitable place on the walls of the entry, as evidence of such examination, with chalk marks, the month and day of such examination; and a failure to place a conspicuous mark or sign on the roof indicating where the dangerous places were, as notice to all of the men to keep out. The other additional statutory counts were based upon the same section of the Mines act, and charged a failure of the mine examiner to take into his possession the entrance check of defendant in error and to turn such check over to the mine manager before the defendant in error was permitted to enter the mine.

The facts, in general outline, are as follows: Plaintiff in error was engaged in operating a coal mine at Troy, in Madison county, Illinois, which was operated by means of a shaft, with the various entries, rooms, hallways, etc., usually found in a mine of that character. Defendant in error had worked there for seven or eight years and had during that time been engaged in substantially every employment about the mine. For something more than a month before

the injury the defendant in error was employed as a slate-shifter and timber-man, and his duties were to clean up falls and remove fallen slate and rock from entries and to timber such places as might require it.  On the night of July 16, 1911, a fall occurred in one of the hallways known as the "run-around," connected with the eleventh west entry, which was used as a parting for loaded cars.  The run-around was from six to eight feet wide and about five feet high.  The fall filled the space from one rib to the other and extended almost to the top or roof of the entry.  About three o'clock in the morning of the 17th of July the mine examiner discovered the fall, which at that time practically filled the entire opening of the entry.  He was on the east side of the fall, and testifies that he marked with chalk on the rib the date of his visit and placed a danger mark there and immediately notified the night boss of the fall.  A gang of men under the night boss at once commenced to clean up the fall.  The fall was the result of the giving away of the timbers which had been used to prop the roof.  On each side of the fall the timbers were in place and the roof properly supported.  The night gang had not finished cleaning up the fall when they went off watch in the morning.  They had removed several car-loads of the fallen slate and stone, working from the sides of the fall, which had the effect of lowering the top.  About seven o'clock in the morning of the 17th defendant in error and others entered the mine and were directed to go to the place of this fall and clean up and remove the same.  After defendant in error and his associates had been working ten or fifteen minutes, William Ruff, the assistant mine manager, came to the place where they were working.  During the short time the men had been at work before the arrival of Ruff they were working on that part of the fall that was under the undisturbed timbering and had not gone under the unprotected roof over the main part of the fall.  Upon the arrival of Ruff he directed them to suspend work until

259 — 23

he made an examination of the roof over the fall. Ruff climbed upon the top of the fallen rock and sounded the roof with a pick handle. After he had finished his examination he made a statement, in the presence of defendant in error and his associates, in regard to the condition of the roof. The witnesses differ somewhat as to the exact language used by Ruff. Some of the witnesses say that what he said was, "The roof is fair;" others say that his language was, "The roof is all right; go ahead and clean up;" and still others say, that he said, "It sounds pretty good; all right; go ahead." Ruff himself does not deny the statements, or any of them, attributed to him, but says in regard to the roof that it sounded a little "drummy" on the edge; that it was soapstone,—more brittle than slate,—but he did not at that time think there was any danger of its falling immediately. Defendant in error claims that he relied on the assurances given by Ruff as to the condition of the roof and proceeded with his work. In about fifteen minutes after Ruff had sounded the roof it fell upon defendant in error, inflicting the injuries complained of.

Defendant in error claims that there is a liability under both the common law and statutory counts, while plaintiff in error contends that there is no liability under either. It is argued that the motion for a directed verdict should have been sustained because the evidence fails to show a violation of any duty owing to defendant in error under the common law count. The substance of that count is, that plaintiff in error wrongfully and negligently directed defendant in error to proceed to work under the overhanging rock in the roof when it was dangerous to do so, and that said danger was known to plaintiff in error, or by the exercise of due diligence would have been known to it, and was unknown to defendant in error. Where the master directs the servant to work in a place of known danger, and the servant, while obeying such order, is injured, he may recover for such injury if he is himself in the exercise of

due care and the danger is not so apparent that no reasonable man would undertake to obey the order given. This rule was applied in *Consolidated Coal Co. v. Wombacher*, 134 Ill. 57, under a state of facts very similar to that presented by the evidence in this case. The evidence tends to prove that after Ruff examined the roof above this fall he ordered the men to proceed to clean it up. He necessarily knew that to carry out his order it would be necessary for the men to work under the unsupported roof. It is wholly immaterial whether Ruff said it was safe or all right, or used any of the other expressions testified to in regard to the condition of the roof. There is no dispute whatever that after he climbed upon the top of the fall and made an examination of the roof, he directed the men, including defendant in error, to proceed and clean up the fall. The unqualified order to proceed with the work after he had made his examination of the roof, of itself amounted to an implied assurance that the roof was safe. (Cooley on Torts,—3d ed.—1134; *Illinois Steel Co. v. Schymanowski*, 162 Ill. 447.) It is the duty of the master not to send his servant into a place of danger, and when the servant is required by the orders of the master to work in a particular place he has a right to assume that the master has discharged his duty in regard to an examination of the surrounding circumstances, and if the servant, in the exercise of ordinary care for his own safety, proceeds to execute the order and to do the work required of him, he will not be held to have assumed the danger of injury unless the danger was so apparent that no reasonable and prudent man would incur it. (*Offutt v. World's Columbian Exposition*, 175 Ill. 472.) In such case the servant will not be defeated of his right to recover even though he has some knowledge of the attendant danger, if, in obeying the order of the master, he acts with the degree of diligence which an ordinarily prudent man would exercise under the circumstances. *Illi-*

*nois Steel Co.* v. *Schymanowski, supra; Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614.

Plaintiff in error contends that a verdict for it should have been directed by the court below as to the common law count, because, it is said, defendant in error was guilty. of contributory negligence as a matter of law. This contention is based on sub-clause (*c*) of paragraph 6 of section 23 of the Mining act of 1911. (Hurd's Stat. 1911, p. 1560.) Section 23 of the statute referred to is entitled "Special Rules" and prohibits various acts, some of which apply to the miner and others to the operator or owner of the mine, and some of which may be applicable indiscriminately to all persons. Sub-clause (*c*) of paragraph 6 of said section is as follows: "Every miner shall sound and thoroughly examine the roof of his working place before commencing work, and if he finds loose rock or other dangerous conditions, he shall not work in such dangerous place except to make such dangerous condition safe. It shall be the duty of the miner to properly prop and secure his place for his own safety with materials provided therefor." Section 29 of the same act provides that any willful neglect, refusal or failure to do the things required to be done by any section, clause or provision of the act by the person or persons therein required to do them, or any violation of any of the provisions or requirements of the act, shall be deemed a misdemeanor, punishable by a fine not exceeding $500 or by imprisonment in the county jail for a period not exceeding six months, or both, in the discretion of the court. This general provision is followed by a proviso applicable only to the operator, making the willful violation of the act a ground for a civil action for damages. This statute applies to those employees who have a fixed working place in the mine. It has no application to employees who, like defendant in error, were required to work all over the mine, in one place as well as another, wherever falls might occur.

The plaintiff in error next contends that the court erred in modifying its fourteenth instruction. That instruction, with the modification made by the court, which is indicated by quotation marks, is as follows:

"The court instructs the jury that if you believe, from the evidence in this case, that the plaintiff was one of a gang of men employed by the defendant for the purpose of timbering, cleaning up falls and making unsafe conditions in such mine safe, and that on the morning of July 17, 1911, the plaintiff went, with a number of other employees engaged in the same line of work as himself, for the purpose of cleaning up the fall, and that he there observed other members of the same gang to which he belonged sounding the roof and making tests of the roof as it then existed, for the purpose of ascertaining whether the same was safe to work under, and that those engaged with him did make tests of such roof, pronounced the same safe, and that acting upon his judgment the plaintiff proceeded to do the work of cleaning up the fall 'and did not rely upon any assurance of safety made by Ruff,' and while so working the portion of the roof which his co-employees had tested,—if you find, from the evidence, they did test it,— fell, and thereby the plaintiff was injured, then you are instructed that the plaintiff is not entitled to recover in this case under the original declaration, and you should by your verdict find the defendant not guilty as to the original declaration."

The criticism made upon this instruction is, that the insertion of the words, "and did not rely upon any assurance of safety made by Ruff," was an assumption that Ruff had given assurances of safety, and that whether he did give such assurances was a disputed question of fact, and it was error to assume its existence in the instruction. It is true that there are disagreements among the witnesses as to the exact language used by Ruff in relation to the condition of the roof. Basing its argument upon these disagreements

as to the language used, plaintiff in error contends that the instruction is erroneous in assuming that there were assurances of safety. We have already seen that there was no dispute whatever as to the order given by Ruff to the men to proceed with the work and clean up the fall after he had made his examination, and that the giving of this order amounted to an implied assurance that the roof was reasonably safe. The instruction is not open to the criticism made upon it.

Plaintiff in error contends that the court erred in refusing instructions 8, 19 and 20 offered by it. These instructions we have examined, and in view of those that were given at the request of plaintiff in error there was no error in refusing these instructions. All the propositions of law contained in these instructions that plaintiff in error was entitled to were given to the jury in other instructions.

Plaintiff in error contends that, as a matter of law, defendant in error being employed as a company-man or rock-shifter and whose duty it was to remove falls and make dangerous places safe, was not entitled to the benefit of the rule which requires that the master shall exercise reasonable diligence to furnish a reasonably safe place in which to perform his work. This contention apparently is based upon a misapprehension of the common law count. As we have already sought to show, that count is not based upon a violation of the duty of the master to furnish a reasonably safe place in which defendant in error was required to work, but is based upon the giving of a negligent order to work in a dangerous place.

Since, as we have sought to show, the judgment is sustainable under the common law count, it is not necessary to extend this opinion to discuss the case under the statutory counts. One good count which is supported by the evidence and as to which there is no reversible error is sufficient to support the judgment below. *Consolidated Coal*

*Co.* v. *Scheiber,* 167 Ill. 539; *Swift & Co.* v. *Rutkowski,* 182 id. 18; *Scott* v. *Parlin & Orendorff Co.* 245 id. 460.

Finding no error in the record for which the judgment should be reversed, it is affirmed.     *Judgment affirmed.*