## William A. Dameron, Appellee, v. Commonwealth Steel Company, Appellant.

1. MASTER AND SERVANT, § 701*—*when evidence shows injury to eye resulted from mere accident.* In an action against an employe to recover damages for injury to plaintiff's eye, alleged to have been caused by the negligence of a servant in emptying a bag of cement near where plaintiff was working so that particles thereof blew in plaintiff's eye, *held* that it appeared from the evidence that the injury was the result of mere accident for which the employer was not liable, there being no proof that there was a safer method of handling the material and plaintiff testified that the servant "emptied the sack like anybody would."

2. MASTER AND SERVANT, § 779*—*when instruction on theory of accident applicable to case.* In an action by a servant against his employer for the negligence of another servant in emptying a bag of cement near where plaintiff was working so that particles of the cement blew in plaintiff's eye, an instruction given for defendant stating: "If you believe from the evidence that the cement got into

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

plaintiff's eyes as the result of mere accident, and neither the defendant nor the plaintiff was the cause thereof, you should find the defendant not guilty," *held* to correctly state a controlling principle applicable to the case.

Appeal from the City Court of Granite City; the Hon. M. R. SULLIVAN, Judge, presiding. Heard in this court at the October term, 1913. Reversed with finding of facts. Opinion filed May 1, 1914.

DAN McGLYNN, for appellant.

WILLIAM P. LAUNTZ and D. J. SULLIVAN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

While William Dameron, appellee, was working for the Commonwealth Steel Company, appellant, and engaged in putting in a form to hold concrete, his eye was injured by fine particles of cement, coming from a sack of that material, which was being emptied near to him by another workman, and he brought this suit against appellant for the damages so sustained. There are two counts in his declaration, each of which charged that while appellee was engaged in working for appellant as a carpenter on November 7, 1911, a servant of appellant, not a fellow-servant of appellee, so carelessly, negligently and recklessly emptied a sack of cement into a wheelbarrow as to cause some of the cement to fall or blow into appellee's eye, causing the injury. There was a plea of the general issue and the trial resulted in a verdict and judgment in favor of appellee for $1,800.

The facts in this case leading up to the injury were not in dispute and were shown to be as follows: On the date above mentioned, and prior thereto, there were, among others, working in appellant's steel plant in Granite City, Illinois, a gang of carpenters and a gang of men mixing concrete, each of which had its own foreman. At this time appellant was causing a new trip

hammer to be placed in its blacksmith shop and was using men from these two gangs to put in a concrete base or pier for the same. The carpenter's gang, of which appellee was one and with whom he had worked some months, first built a platform for the concrete in an excavation made in the dirt floor of the blacksmith shop, in which the men engaged in the concrete work put the concrete, forming a pier 30 x 54 inches in size and extending some four or five inches above the level of the floor. A few days later, the concrete having become sufficiently hardened, appellee and other carpenters took the form away and made a cushion for the trip hammer of heavy timbers in the center on top of the pier. It was then necessary to make another form of boards around the top of the pier so that a strip of concrete some three inches thick could be built on top around the cushion. While this was being done, one of the concrete men, at the direction of his foreman, brought in a wheelbarrow partly filled with sand and placed it near the pier on some dirt taken from the excavation. After appellee had finished putting the form around the pier and while he was down on his knees calking with clay some places around the bottom where the pier was chipped off, so that the concrete would not run out, one of the concrete gang brought a sack of cement and emptied it onto the sand in the wheelbarrow, turning the sack upside down and shaking it by the bottom corners. Just as he had finished emptying the sack, appellee turned his head and looked up and as he did so some of the cement went into his right eye. At this time the wheelbarrow was near the pier about two feet from appellee, and by reason of it being on the dirt and appellee being on his knees, his head was about on a level with the same. The injury did not seem serious at first and for a day or so appellee remained at work, bathing his eye in warm water and using a soothing application of some kind in an attempt to cure the hurt. Later he was

treated by a number of different physicians who sought to relieve him, without success, and at the time of the trial he had lost the sight of his eye.

Appellant urges with considerable force, among other grounds depended on for a reversal of this judgment, that appellee and the man who emptied the sack of cement were fellow-servants and also that the loss of sight resulted from appellee's mismanagement and neglect of the injury after it had been caused, but these questions will not be considered by us here, as we think the result of the appeal must be determined along another line.

The declaration was based upon the theory that plaintiff's injury was due to the careless, negligent and reckless act of a servant of appellant, for which appellant was responsible and should be held in damages to appellee. The Court, at the instance of appellant, gave an instruction to the jury, saying: "If you believe from the evidence that the cement got into plaintiff's eyes as the result of a mere accident, and neither the defendant nor the plaintiff was the cause thereof, you should find the defendant not guilty." This instruction correctly stated a controlling principle applicable to this case, for appellant could only be held to damages for negligence caused by it through its servant and not for the result of a mere accident. "For a purely accidental occurrence causing damage without the fault of the person to whom it is attributable, no action will lie, for though there is damage, the thing amiss—the *injuria*—is wanting." Cooley on Torts (2nd Ed.) p. 91.

In *Illinois Cent. R. Co. v. Smiesni,* 104 Ill. App. 194, the Court in citing the above quotation also states, that an instruction which told the jury if they believed from the evidence that the whole occurrence was a mere accident without fault or negligence on the part of the defendant, the verdict should be not guilty, was a correct statement of the law.

In *Perryman v. Chicago City Ry. Co.*, 242 Ill. 269, the Court sustained an instruction stating, that "negligence is the omission to do something which a reasonable man, guided by those ordinary considerations which ordinarily regulate human affairs, would do or the doing of something which a prudent and reasonable man would not do," and states that this definition of negligence has been approved by numerous cases. This Court said in *Illinois Cent. R. Co. v. Hobbs*, 58 Ill. App. 130: "Negligence is not presumed merely because there was an accident, if what was done or omitted was in the usual course; if it was not in itself improper.    *    *    *

The inquiry is not whether the accident might not have been avoided if it had been anticipated, but whether, under all the circumstances, it was negligence not to anticipate and provide against its occurrence in the exercise of ordinary prudence. Ordinarily, if negligence is not apparent and an injury occurs, it belongs to that class designated as accidental. *Wabash, St. L. & P. Ry. Co. v. Locke*, 112 Ind. 404."

What did the servant of appellant do in emptying the sack of cement which is not ordinarily done under such circumstances or what did he omit to do which should have been done? No evidence was introduced by appellee to show that there was any better, safer or other way of emptying cement from a sack than that adopted by the man who did it. Appellee himself in giving his account of the occurrence stated: "He was possibly within two feet of my face, maybe closer, my being down in a hole and him on an elevated point. *He emptied the sack like any body* would, catching it at the bottom corners of the cement sack and shaking out the corners. Just as he turned away I was unfortunate enough to look around to see what was going on." The fact that the servant of appellant was close to appellee at the time he emptied and shook out the sack of cement cannot be held by the court to be conclusive proof that he was guilty of negligence in so

doing. It is a matter of common knowledge that cement is now one of the most generally used materials employed in certain trades and industries; that it is generally packed for shipment in bags or barrels from which the cement is usually taken just as it is needed for use; also, that it is a light, powdery substance which easily floats through the air; that there is nothing in its composition or ingredients which causes the use of it to be accompanied with such special dangers as would require it to be handled in a manner different from other building materials of like character for the protection of the persons engaged on the work. Not only was there no proof that there was another and safer way of handling the material than that adopted by the servant of appellant in this case, but appellee himself testified that such servant "emptied the sack like any body would," showing it was done in the ordinary way. It appears to us that all that can be said of this occurrence and the injury to appellee is that it was a mere accident such as no ordinary, careful and prudent man would be called upon to anticipate and provide against under like circumstances; that it was like countless other accidents which occur from day to day unexpectedly and out of the usual course for which no one can be held legally accountable.

The judgment of the court below will be reversed and as there is no controversy as to the facts upon which we have based our decision, the case will not be remanded.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment: The court finds that at the time appellee received the injury complained of, appellant was not guilty of any negligence causing the same to be brought about or contributing thereto.