William David Moore, Administrator of the Estate of Maggie Moore, Appellee, v. Jansen & Schaefer, Appellant.

Gen. No. 8,517.

Heard in this court at the April term, 1931. Opinion filed February 1, 1932.

O'HARRA, O'HARRA & O'HARRA and JESSE BLACK, JR., for appellant.

HARTZELL, CAVANAGH & MARTIN, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an action for damages growing out of injuries causing death to appellee's intestate.

The declaration, after amendment, consisted of three counts. The first count charged in substance that on September 27, 1930, on hard road route number 95, about óne and one-fourth miles southeast of Dallas City, in Hancock county, the defendant was driving and operating a certain truck and trailer attached thereto in a reckless, careless, negligent manner, in that said truck and trailer, with the hopper thereon, were not properly lighted, marked and guarded; that while plaintiff's intestate, exercising all due care and caution for her own safety, was riding in an automobile upon said hard road number 95, about one and one-quarter miles south and east of Dallas City, by reason of said carelessness, recklessness and negligence, the automobile in which plaintiff's intestate was riding was struck by said truck and trailer, turned over and knocked off the hard surfaced road and plaintiff's intestate was then and there injured and died as the result of said injuries.

The second count of the declaration charges in substance that defendant was operating or driving a truck with trailer attached thereto and was moving certain hard road construction equipment and machinery along said highway at one o'clock a. m. in an easterly or southeasterly direction, and that the same was not properly lighted, marked or guarded; that defendant was so carelessly, negligently and recklessly moving said truck, trailer and machinery along said public highway in that they failed to fix proper lights upon

said truck, trailer and machinery to warn persons then and there upon said public highway; that said truck, trailer and machinery were large, cumbersome and extended over a large portion of said hard surfaced road and that defendant negligently and carelessly failed to give warning to protect persons then and there driving along said public highway from danger from running into and hitting the same.

The third count of the declaration, after making the same general charges about the hard road, etc., alleges that plaintiff's intestate was riding as invitee in an automobile operated by one Gibson Strausbaugh, which was being driven in a northerly direction near the residence of the said Leon Vass; that said defendant and the said Gibson Strausbaugh, and each of them, so negligently operated and drove and managed the said motor truck, trailer and road construction machinery and equipment of defendant and automobile of the said Gibson Strausbaugh that by and through said negligence the said motor truck, trailer and road construction machinery and the said automobile collided, and by reason whereof plaintiff's intestate, while at all times exercising due care and caution, was struck and injured, and as a result thereof died. The declaration also avers the next of kin and the damage in the sum of $10,000.

The particular equipment which appellants were moving on the night of the accident was a large steel hopper used in mixing cement in road construction. When the hopper was in operation it was supported by four steel legs of angle iron six inches by six inches by three-eighths inch thick, and from the ground to the top of the hopper was 24 feet. The hopper at the upper part was 15 feet square. Boiler plates on each side came straight down a distance of four and one-half feet. Below these plates, on the sides, was a steel plate construction which came to a common center or hopper, into which the cement and gravel were

gathered for the purpose of mixing. From steel corner post to steel corner post were angle iron braces three inches by three inches by three-eighths inch thick, and also from each corner post were two other braces of angle irons three inches by three inches by three-eighths inch, which went up to the body of the hopper. The hopper was steel construction throughout, was aluminum color and weighed six tons.

What was called in the evidence a ''trailer'' was devised for transporting the hopper. This trailer consisted of a single axle with two wheels with dual tires. The axle was first made for the semitrailer. Timbers were placed on the semitrailer and fastened to the axle. A part of the legs was taken off the hopper. A red elm tongue eight inches wide and six inches thick was put on the trailer and fastened to an auto truck in front. The hopper was put on these timbers and bolted fast to them. Wheels with dual tires were put on the axle. The hopper was bolted to the tongue and the timbers on the axle. A U-shaped strap iron was put around the rear axle of an autotruck in front, used to pull the semitrailer and fastened to the six-inch by six-inch red elm tongue of the trailer.

The hopper from outside to outside, after it was installed on the semitrailer, was 15 feet wide. From the pavement to the top it was 14 feet high. The axle was as near the center of the hopper as it could be placed so as to keep it balanced. The upper part of the hopper was square. Each face of the upper square was boiler plate, four and one-half feet vertical distance and 15 feet from right to left. The face of the hopper was 15 feet wide in the direction in which it was traveling. From the bottom of the boiler plate the construction ran down into a hopper bottom about six feet long and two feet wide, where the material went through when mixing. There was an angle iron six inches wide on the top edges of the hopper.

When the machine was about to be transported, a running board was devised for men to stand on while in transit. The running board was placed across the front end of the hopper 15 feet in length and about four and one-half feet below the top of the hopper. The body of the autotruck which pulled the semitrailer was nine feet long and the body of the truck was two feet deep. There was no cab on the towing truck. The driver's seat on the towing truck was on the outside and the body of the towing truck ran the same height from front to back. The height of the towing truck from the top of the body was six feet. The width of the towing truck from the outside wheel to the outside wheel was six feet two inches. From the outside to the outside of the wheels of the semitrailer was 12 feet.

The deceased was riding in a Model "A" Ford sedan at the time the accident occurred, and was returning from LaHarpe and going to her home, which was near Niota. Two boys, named respectively Strausbaugh and Grigsby, were in the front seat with the deceased and a girl named Wilcox. Strausbaugh was seated on the left side of the front seat, driving the car. Maggie Moore, the intestate, sat next to him and at her right side sat Grigsby with the Wilcox girl on his lap.

In the back seat there were two other boys and two girls, one boy sitting on the left side of the seat, a girl at his right, a boy at her right and a girl on his lap. Just prior to the time of the accident the truck pulling the hopper was traveling at the rate of 12 miles an hour. The testimony of the witnesses on both sides shows that the car in which the deceased was riding was traveling at a speed of between 35 and 40 miles an hour just prior to the time of the accident.

The facts as recited by appellant are that the Ford truck which preceded the outfit 150 to 200 feet was

equipped with ordinary electric lights. The truck was a left-hand drive, and the driver carried a red lantern in his left hand, held outside the car, for the purpose of flagging traffic. The auto truck pulling the trailer was equipped with Presto lights, a gas illumination. The lenses on the autotruck were thickened at the top so the lights shot downward and across the roadway. They were not glaring lights. At each of the four front corners of the hopper was hung a red lantern. At the center in front of the hopper at the top was fastened a two-mantle Coleman gasoline lantern with a reflector at the top. This lantern was powerful; it furnished illumination like city gas and the light was reflected downward and over the hopper in all directions, so that the entire 80 feet of roadway and the hopper were illuminated. Red lanterns were also placed on the rear lower left-hand and lower right-hand corners of the hopper. The truck following the hopper was equipped with a red lantern at the lower left-hand corner in the rear. The rear autotruck traveled from four to six feet behind the hopper and the headlights were turned off because, following the hopper on a long trip, the constant looking at the bin and the constant reflection of the lights would be blinding to the driver of the rear autotruck.

Four of the occupants of the car in which the deceased was riding testified. Emilene Moore, who was a sister of the deceased, testified that she did not see the hopper until after their car had passed the lights of the truck which was pulling the hopper, and that she did not see the hopper until they were three or four feet from it. She further testified that the car which she was in did not meet any other truck just shortly before the collision. Clara Siegfreid testified that she did not see anything but the headlights on the truck which was pulling the hopper, and that they met no other vehicle shortly before the collision. Lawrence

Butterfield testified that he saw nothing but the headlights of the truck which was pulling the hopper. He further testified that they met no other truck shortly before the accident and that Strausbaugh, the driver, was looking in a northerly direction just prior to the time of the accident, which would be in the direction in which the car was traveling. John Quisenbery testified that he first saw the headlights of the truck which was pulling the hopper when they were about 60 rods distant from it, and that he never saw anything but the headlights of the truck. He further testified that they met no other car after leaving LaHarpe until the time of the collision. All of these witnesses testified that Strausbaugh was doing nothing except driving the car; that he was looking in the direction in which the car was going, and that there was nothing to impair his vision from seeing directly down the road in front of him.

Appellee offered in evidence the testimony of different witnesses who were the occupants of four different cars that met the hopper at different distances between Niota and the point of the accident. One of these witnesses, Alton Luder, testified that he met the outfit between Dallas City and Niota; that he was going in a westerly direction and it was going in an easterly direction, and that he could see and did see until he was within 10 or 12 feet of the hopper as it extended out over the road, only the headlights of the truck which was pulling it. He also testified that there was a light Ford truck a short distance in front of the truck pulling the hopper, and that the man in the Ford truck waved a lantern and shouted at him. Grace Bertschi, who was riding in the car with him, testified that after passing the lights of the truck pulling the hopper she saw nothing but one red light; that they had to pull off the pavement to get by the outfit; that she could not see what it was that they met and that

they pulled clear off the pavement to pass it. Guy Oldham testified that he met the outfit between Pontoosuc and Dallas City; that he saw the lights on the truck ahead and the lights on the truck pulling the hopper and that was all he could see; that he was blinded and could not tell what it was that he met. Clarke Lee testified that he met the hopper and outfit between Niota and Pontoosuc; that he first saw the car ahead; that somebody stuck out his hand with a red light in it; that he then met a car with bright lights and after he got by these lights just a little he saw two red lights; that he did not see the red lights until after he passed the lights of the truck pulling the hopper and that he had to swerve out of the road to keep from hitting it. Ed Dellinger, who was in the front seat with Lee, who was driving the car, testified that they first met a truck with a driver holding a red lantern out of the left window; 50 yards further they met another truck; that the second truck had bright headlights and that when they were even with the lights on this truck he saw two red lanterns between four and six feet high off the road.

Noble Jones testified that he and Franklin Moore, a brother of the deceased, were driving in a small Ford without a top on it; that they met the outfit just outside of Dallas City and toward LaHarpe. This was the last car which the evidence shows met the outfit prior to the time of the accident, and was the last car that met it prior to the time that the driver, Weaver, drove away in the truck which had been driving a short distance in front of the outfit, and from which he had been giving warning to people approaching by waving a red lantern and calling out. Jones met the truck a little over a quarter of a mile north of where the accident happened. All he could see was the headlights on the truck. After he passed the truck he saw the hopper. Moore testified as to meeting the outfit that

just before they met it they met a light truck about 50 feet in advance of the outfit and that the occupant of that truck swung a lantern and called: "Look out, boys"; that the lights from the big truck, which was pulling the hopper, blinded him and that after he passed those lights he saw the hopper; that he didn't believe they missed the hopper over six inches; that he was about 12 or 14 feet from the hopper when he first saw it.

It is undisputed that some little time before the accident the advance car with a red lantern for warning had left the vicinity of the machine and gone to La-Harpe to get some sandwiches for appellant's men. The accident occurred at about 1:30 o'clock in the morning. The car in which appellee's intestate was riding was on the right of the black line in the center of the road, turned to the right of the truck and plunged head on into that part of the steel hopper which extended over the black line in the center of the highway into the pathway of the approaching car. The center of the Ford radiator struck the corner post and was split. The entire hood of the Ford went under the hopper so that the corner post of the hopper was against the gas tank. The driver of the Ford and two others were knocked senseless and Maggie Moore was killed. The party with whom deceased was riding had been at a dance, had done some talking and a little singing on the way home. The deceased was in between the others and almost behind the wheel where she had less chance than the others to view the road and there are no proofs in the record tending to show that she was other than in the exercise of due care for her own safety and at and before the injury did anything which contributed to her injury or omitted to exercise due care in her own behalf, if the testimony of appellee's witnesses is to be taken as true.

There was a verdict and judgment for appellee in the sum of $7,500 and appellants have brought the record, by appeal, to this court for review.

At the close of appellee's testimony and again at the close of all the testimony, appellant moved for a directed verdict on the ground that no negligence was shown on the part of appellant, and that the proofs did not show that appellee was in the exercise of due care for her own safety. The acts of negligence charged are: First, that appellant was driving the truck and trailer negligently in that said truck and trailer, with a hopper thereon, were not properly lighted, marked and guarded; second, that the same was not properly lighted, marked and guarded and that there was no warning given; and the third is a count of general negligence against both appellant and the driver of the Ford. There was no demurrer to the declaration and only the plea of the general issue. The question whether the truck and trailer were properly lighted is a question of fact arising out of the testimony in this case and is not a question of law, as contended by appellants. The facts in this case are not conceded or agreed upon but are widely variant, all of which have been submitted to the jury. An equal number of appellee's witnesses, who approached the truck and trailer from the southeast, testified that they saw no red lights and did not see the hopper until they had passed the truck, and that the lights on the truck blinded them. They looked, and if they were unable to see the red lights on the hopper it may have been because the red lights were not there, or it may have been because the bright lights on the truck between the hopper and the approaching machines shut out all view of red lights at the rear, a portion of which were higher in the air. Either the failure to properly light the hopper or to so light the propelling truck as to shut out the lights to the rear, whether they were

red lights, or otherwise, would constitute proof of negligence under the first and second counts of the declaration.

In the second count is the charge, "there was no warning." The evidence shows that the appellants thought it necessary, in order to properly give warning to approaching vehicles, that the witness Weaver should ride in a truck a short distance in front of the truck pulling the hopper, and wave a red lantern and call out to persons whom the machine was meeting, warning them of the danger. This was done all the way from Niota down to a distance of about a quarter of a mile from where the accident happened, and while this was being done, although each car which met the hopper avoided striking it with difficulty, nevertheless the warning given by Weaver was sufficient to put them upon their guard, so that they avoided any accident. However, as soon as Weaver and the truck in which he was riding departed and left for La Harpe for the purpose of getting sandwiches, no one then was ahead to give any warning, and the first car which the machine met, which was the car in which the deceased was riding, struck and ran into the hopper and the deceased was killed.

The court did not err in refusing a directed verdict for appellant on the ground that no negligence was shown sustaining the counts, or one of them, in the declaration. If there is one good count in the declaration which is supported by the evidence, the verdict and judgment should be sustained. (*Grannon v. Donk Bros. Coal & Coke Co.*, 259 Ill. 350; *Vail v. Graham*, 259 Ill. App. 172.) In this case the proofs are ample.

Appellant further contends that the deceased was guilty of contributory negligence in not warning the driver that he was driving into a place of danger, and it is assigned as error that it was negligence for plaintiff's intestate to ride in a two-seated, five-passenger

Ford sedan with four adult passengers in the driver's seat and four in the rear seat. As to the first assignment, there was no duty upon the deceased in this regard until she herself became aware of the danger or had an opportunity to become aware. The evidence shows conclusively that neither she nor any of the other passengers in the car in which she was riding ever became aware of this danger, and further shows that none of them ever had an opportunity to become aware of it, for the reason that the hopper and the warning lights could not be seen by anyone driving a car and meeting the outfit until they were within about nine feet of it.

As to the second ground of the assignment, it is only necessary to suggest that in order for any act or failure to act upon the part of the deceased to amount to contributory negligence, it must have appeared from the evidence that the act or failure to act in part, at least, contributed to cause the collision. *Ford v. Hine Bros. Co.*, 237 Ill. 463.

The evidence shows the position of each person in the car at the time of and just prior to the time of the accident, and shows that the number of persons in the car in no way interfered with the vision of the driver of the car or his opportunity to see, and did not interfere with or hinder him in the management, control or operation of the car. Therefore, under the evidence in this record, there is nothing to show that the number of persons in the car in any way contributed to the cause of the collision.

We cannot agree with appellant's contention that the record shows that appellee's intestate was guilty of contributory negligence and not in the exercise of due care for her own safety, as a matter of law.

Appellant assigns error that the court refused to admit a hand drawing of the truck and trailer, with the hopper on the trailer. It is not a photograph but a drawing by lines to indicate the objects being pro-

pelled by appellant. The drawing undertakes to show where two men were on the platform in front of the hopper, one of them waving a lantern painted red and four other lanterns painted red are shown in the drawing, and one white lantern at the top of the hopper. The drawing was merely supplementary to the oral proof and in undertaking to show two men on the running board and five painted lanterns on the hopper, the court did not abuse its discretion in refusing to admit the exhibit. (*Henke v. Deere & Mansur Co.*, 175 Ill. App. 240.) From the reading of the evidence as to the situation just prior to the time of the accident, it is evident that the drawing is incomplete and inaccurate and not based upon all the evidence. The drawing fails to show the man in the truck who was driving the truck. There is no evidence to show that the man who was claimed to be standing upon the footboard holding a lantern was holding it in the position as shown by the drawing, nor is there any evidence to show the size of the lanterns, which the drawing attempts to set out; nor does the drawing show the distance from the front truck to the hopper. It is apparent from looking at this drawing that the main purpose of it was to impress on the jury the red lights.

Appellant complained of the giving of appellee's eighth instruction, as follows: "The Court instructs you that, even though you believe from the evidence that the driver of the car in which plaintiff's intestate was riding was negligent in the operation of the car in question at or immediately prior to the time of the accident in question, then, under the law, such negligence, if you find from the evidence there was such negligence, could not be imputed to the plaintiff's intestate."

It is contended that the giving of this instruction omits the element of due care on the part of the deceased and was error, citing *Grifenhan v. Chicago Rys. Co.*, 299 Ill. 590, 594. *Grifenhan v. Chicago Rys. Co.*,

474

*supra,* does not seem to be exactly in point. It was held in *Arndt v. Riverview Park Co.,* 259 Ill. App. 210, 218:

"It is urged that the court erred in giving the first instruction requested by plaintiff, which told the jurors that even though they believed from the evidence that the mother of plaintiff was guilty of negligence on the occasion in question, yet under the law, such negligence, if any, could not be attributed to plaintiff. It is argued that this instruction presented an abstract proposition of law which was not applicable and therefore should not have been given to the jury. *Garvey v. Chicago Rys. Co.,* 339 Ill. 276, is cited to that point. We think the criticism is without merit. A similar instruction was approved by the Supreme Court in *Perryman v. Chicago City R. Co.,* 242 Ill. 269, 271, and the Appellate Courts have often approved similar instructions. *Vanek v. Chicago City Ry. Co.,* 210 Ill. App. 148; *Deheave v. Hines,* 217 Ill. App. 427."

The principle of the instruction seems to be approved in *Hazel v. Hoopeston-Danville Motor Bus Co.,* 310 Ill. 38, 51, and we cannot hold that the giving of this instruction constituted error.

Appellant further complains of the giving of appellee's instructions nine and ten as follows:

"9. If, from the evidence in the case and under the instructions of the Court, the jury shall find the issues for the plaintiff and that the plaintiff has sustained damages as charged in the declaration, then, to enable the jury to estimate the amount of such damages, it is not necessary that any witness should have expressed an opinion as to the amount of such damages, but the jury may themselves make such estimate from the facts and circumstances in proof relating to the subject of the extent of plaintiff's damages."

"10. The Court instructs you that if you find the issues for the plaintiff, then, in assessing the damages

to the next of kin, you may consider the pecuniary benefits which the next of kin may have derived from said deceased, had she not been killed, at any age of her life.''

Appellee meets this contention with the statement, borne out by the record, that appellant's motion for a new trial was in writing and that none of the grounds stated questioned the amount of the damages found by the verdict of the jury. (*Yarber v. Chicago and Alton Ry. Co.*, 235 Ill. 589; *Illinois Cent. R. Co. v. Johnson,* 191 Ill. 594; *Wolfstein v. Illinois Power & Light Corp.*, 254 Ill. App. 362, 371.) The court said in the last case: ''It is a familiar and elementary rule that where a party files a written motion for a new trial and specifies therein the grounds or points upon which he relies, all questions not embraced in the points so filed, are waived. *Chicago City Ry. Co. v. Smith,* 226 Ill. 178; *Yarber v. Chicago & A. Ry. Co.*, 235 Ill. 589; *Erikson v. Ward,* 266 Ill. 259. It has been expressly held that the point that the verdict is excessive must be stated as one of the grounds so filed or it is waived. *Jones v. Jones,* 71 Ill. 562; *Ottawa, O. & F. R. Val. R. R. Co. v. McMath,* 91 Ill. 104; *McClaren v. City of Gillespie,* 250 Ill. App. 53.'' And the court also said in that case: ''So also the propriety of an instruction pertaining solely to the question of damages will not be considered on appeal if the party complaining did not urge as a ground for a new trial that the damages awarded were excessive. *Linck v. Scheffel,* 32 Ill. App. 17; *City of Paxton v. Frew,* 52 Ill. App. 393; *Wettrick v. Martin,* 164 Ill. App. 273.''

The same rule applies to instruction number eleven on the question of damages objected to by appellant.

Appellant complains of the giving of appellee's thirteenth instruction as follows:

''The Court instructs you that, under the law, the maximum width of any vehicle and its load, excepting

loads of loose hay, straw, corn fodder and other similar farm products, agricultural implements and threshing machines, shall not exceed eight feet, and in this case, if you find from the evidence that the width of defendant's truck, trailer and hopper in question was of a maximum width in excess of eight feet, and that said vehicle and load of said defendant was not such a vehicle or load as is excepted by law as above stated, and if you further find from the evidence that the fact that said vehicle and load of defendant was in excess of eight feet in width, if you find from the evidence that in fact there was such excess, caused or contributed to the cause of the accident in question, then you have the right to take into consideration that fact, if you find it to be a fact, together with all other evidence in this case, in determining whether or not defendant was guilty of negligence on the occasion in question.''

It is objected that this instruction draws attention to particular facts in the case. The instruction is based upon Cahill's St. ch. 95a, ¶ 3; section 203 of chapter 121 of Hurd's 1929 Revised Statutes, and states the law of the case. The purpose of the instruction was not to call the jury's attention to any particular facts, but was to call the jury's attention to the law upon the question of the width of a load which it was lawful to have upon a highway where this accident happened. The evidence pointed out was not controverted, as there was no question as to the width of the hopper, appellant having proved its width by its own witnesses. The law was clearly stated in the instruction and it is contended that where facts are not disputed or controverted, and the instruction clearly states the law in regard thereto, that the singling out of the same is not reversible error.

Portions of appellant's instructions are subject to the same criticism if appellee's instruction was in er-

ror.  Appellant objected to other instructions.  Objection was made to appellee's first instruction on the ground that it ignores the fact "that plaintiff's intestate, when invited to ride, knew she was being asked to ride with seven other people in a Ford two seated five-passenger car," and that for her to accept such an invitation was negligence.  We cannot hold that such conduct is negligence as a matter of law.  Appellant's second instruction laid down the same rule of law.

Appellant objects to appellee's second instruction, based upon general negligence in the operation of appellant's truck and as applied to appellant's truck only.  The third count charged general negligence against appellant and the driver of the Ford car, Strausbaugh, and it is objected that the instruction is not directed against the operation of both cars.  Appellant's instruction number eight is subject to the same criticism.  Where the charge is joint against two parties and the proofs are sufficient to show the negligence of one, it is not error to submit the cause to the jury as to the one against whom negligence is proven.  *Pierson v. Lyon & Healy,* 243 Ill. 370.

Some other errors are pointed out, none of which we deem of sufficient importance to extend this opinion further.

While proofs were submitted by appellant tending to show that persons approaching or in front of the truck and hopper could see the red lights, the jury heard the testimony and saw the witnesses, and we cannot say as a matter of law that the verdict is against the manifest weight of the testimony.

Finding no error in the record warranting a reversal of the verdict and judgment, the judgment of the circuit court of Hancock county is affirmed.

*Affirmed.*